**Steve RAMSEY and Judy Ramsey, Appellants (Plaintiffs),**

v.

**PACIFIC POWER AND LIGHT, a Maine corporation; Pacificorp, a Maine corporation; Unnamed Employees A, B, C, D, E, of Pacific Power and Light or Pacificorp; and Unnamed Contractors AA, BB, CC, Appellees (Defendants).**

**No. 89–265.**

Supreme Court of Wyoming.

June 15, 1990.

Phillip T. Willoughby, Casper, for appellants.

Mark L. Carman of Williams, Porter, Day & Neville, P.C., Casper, for appellees.

Before THOMAS, URBIGKIT and GOLDEN, JJ., RAPER and ROONEY, Retired JJ.

ROONEY, Justice, Retired.

This is an appeal from a summary judgment entered in favor of a landowner against an employee of an independent contractor, the employee being injured while performing work on the landowner's premises.

We affirm.

Appellants acknowledge the general rule and its exception which are applicable to this case as set forth in *Stockwell v. Parker Drilling Co., Inc.,* 733 P.2d 1029 (Wyo. 1987); *Hill v. Pacific Power & Light Co.,* 765 P.2d 1348 (Wyo.1988); and *Brewster v. Salveson Construction, Inc.,* 765 P.2d 1350 (Wyo.1988). Such general rule of law is that the owner of land is not liable to the employee of an independent contractor, except as stated in Restatement (Second) of Torts, § 414 (1977):

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

Comment (c) to this section of the Restatement was quoted in *Stockwell,* 733 P.2d at 1033, as follows:

" 'In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control *over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.* Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work his own way.' " (Emphasis in original.)

In this case, the employee was appellant, Steve Ramsey (hereinafter referred to as "Ramsey"). His employer was Northwest Energy Services Company (hereinafter referred to as "NESCO"). The landowner was appellee, Pacific Power and Light (hereinafter referred to as "PP & L"). Ramsey was injured on May 27, 1988, while performing work as a pipefitter at PP & L's power plant near Gillette, Wyoming. The work was done in connection with a Master Agreement contract between PP & L and NESCO under which NESCO performed annual maintenance and inspection work at the plant. The plant was shut down during this "maintenance outage." Appellants do not contest NESCO's status in the operation as an independent contractor, but they contend that PP & L exercised control over the work site at the time of the injury to Ramsey and that its failure to exercise reasonable care in connection therewith resulted in the injuries.

Thus, we must examine the record to determine if that submitted in connection with the motion for summary judgment

reflected such exercise of control over the work place at the time of the injury.[1]

The injury occurred when two of NESCO's employees were moving on a duct about 80 feet above the ground in order to work on a damper door. Ramsey was working below on a pipe about 14 feet above the ground. The two employees on the duct were pulling welding leads. They heard a pin,[2] which was used to hold the damper door in place, begin to roll toward the edge of the duct. Their effort to stop it before it rolled over the duct was unsuccessful. The pin hit Ramsey on his head, causing the injuries. In their depositions, each of these two NESCO employees stated that they were not supervised or given orders by PP & L employees.

Appellants argue in two respects that the material before the district court was sufficient to indicate possible control of the premises by PP & L at the time of the incident.

First, they point to an incident which occurred the day before Ramsey was injured in which another damper door about 50 yards from the damper door on which the two NESCO employees were working closed suddenly because of defective construction. PP & L employees then came into the area to inspect the damage to the closed door and to correct the problem. After doing so, NESCO resumed work. Not only did the closed door incident occur at a distant location from the place at which the pin fell, but there was nothing before the district court to indicate that the pin was on the duct at the time PP & L employees were involved with the closed damper door. It is uncontested that NESCO had resumed control of the work site and was performing under the contract at the time of the injury.

Second, appellants contend that deposition statements made by John Beltz, safety coordinator for PP & L at the power plant, reflect control by PP & L over the work site at the time of the injury. Such statements were to the effect that he had the responsibility to coordinate safety programs at the plant *for PP & L employees*; that he would make contractors aware of special safety policies when they began work at the plant; and that if he observed a safety deficiency in connection with a contractor's work, he would notify one of the contractor's supervisors of it and see that the deficiency was corrected.[3]

---

1. As stated in *Stockwell,* 733 P.2d at 1031:
   "Our oft-recited standard of review on appeal from summary judgment is:
   " 'When reviewing a summary judgment on appeal, our duty is the same as that of the district court in that we have before us the same material and must follow the same standards. The party moving for summary judgment has the burden of proving there exists no genuine issue of material fact and that [he] is entitled to judgment as a matter of law. We look at the record from the viewpoint most favorable to the party opposing the motion, giving him every favorable inference which may be drawn from facts in the affidavits, depositions, and other material properly submitted in the record.' (Citations omitted.) *Noonan v. Texaco, Inc.,* Wyo., 713 P.2d 160, 162 (1986). See also *Jones v. Chevron U.S.A., Inc.,* Wyo., 718 P.2d 890, 893 (1986)."

2. The pin weighed 9.5 pounds, was 3 inches in diameter and 8 inches in length.

3. Following is his testimony with reference to such notification:
   "Q. Okay. One of the areas that I'm unclear on is that the interaction of PP and L with a contractor in trying to avoid a situation such as this and the things that happened that you just described—
   "A. Uh-huh.
   "Q. —can you elaborate on that interaction? As an example, if you noticed an area was not clean and there were workers above and below, what action would you take?
   "A. I would approach that particular crew's supervisor.
   "Q. And when you say approach, what do you mean?
   "A. In other words, I would tell him that this—you should not have people working above or below, the area needs to be clean. I would mention what offenses that I found.
   "Q. And if he did not take action, what would you do then?
   "A. If he refused to take action?
   "* * * [objection]
   "Q. (BY MR. WILLOUGHBY) You've indicated that if you saw an unsafe condition, that you would contact a supervisor of the employees working in or around that unsafe condition?
   "A. That's correct.
   "Q. That's correct?
   "A. Un-huh.
   "Q. All right. And that is part of your job responsibilities?

There is nothing in the record to indicate that John Beltz had knowledge of a NESCO employee working beneath a place where other NESCO employees were working or that he had any knowledge concerning the origin or location of the pin.

The record reflects that none of NESCO's employees were supervised by PP & L employees. NESCO conducted its own safety meetings. If John Beltz observed a safety deficiency by NESCO, he certainly had the obligation to notify NESCO at the supervisory level and to have it corrected. To do otherwise could result in severe damage to the property of PP & L or in severe injury to someone's person—as happened in this instance.

John Beltz's coordination of safety programs for PP & L employees, notification by him to contractors beginning work at the plant of special safety policies, and notification to one of the contractors' supervisors of an observed safety deficiency in connection with the contractor's work to see that the deficiency is corrected fall far short of that set out in Comment (c) to § 414 Restatement (Second) of Torts, *supra*, as necessary to retain control of the work place.

Accordingly, there was nothing before the trial court to indicate a retention by PP & L of control over the work site at the time of the injury—nothing to support an exception to the general rule that the owner of land is not liable to the employee of an independent contractor for work injuries occurring on the premises. The trial court

properly found that PP & L did not owe a duty to Ramsey in this instance.

Affirmed.

"A. Yeah, I would say—I would agree with that.
"Q. All right. If the supervisor did not respond to your—well, let me rephrase. You said you would suggest changes to that supervisor?
"A. I would identify the deficiencies with him.
"Q. All right. Do you do anything more than identify the deficiencies?
"A. Yes, I would ask him to correct it.
"Q. And if he—and is that part of your job responsibilities?
"A. Yes, it is.
* * *
"Q. All right. Well, let me ask you this. In regards to your job responsibilities, that's what

I'm getting at, I don't want to know an answer to a hypothetical, I don't want you to speculate. I want to know what your job responsibilities dictate or require you to do when you find a deficiency in the same area and ask that that be recommended, what are you supposed to do, what's your job responsibilities at that time?
"A. Okay. If I find something that I feel is seriously wrong, I can stop that *individual action* right then and there.
"Q. How do you do that?
"A. I can go through that supervisor and tell him I want that stopped immediately." (Emphasis added.)