■ In the Matter of the Claim of LAURYANN FRIEDMAN, Respondent, v NBC INC. et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent.—Mercure, J. Appeals (1) from a decision of the Workers' Compensation Board, filed October 6, 1988, which ruled that claimant's decedent sustained an accidental injury in the course of his employment, and (2) from a decision of said Board, filed April 27, 1989, which, *inter alia,* determined the amount of the award of workers' compensation benefits.

Decedent, employed by NBC Inc. as manager of film and tape coordination in its engineering department, committed suicide at work on May 14, 1980. Claimant, decedent's widow, made application for workers' compensation death benefits. NBC controverted the claim upon the grounds that decedent had the "willful intention" of causing his death *(see,* Workers' Compensation Law § 10 [1]) and that the death did not arise out of or in the course of decedent's employment. The Workers' Compensation Board found that decedent was subjected to extraordinary stress at work and that this stress was a direct cause of his depressed state, which, in turn, resulted in his suicide. Accordingly, the Board concluded that decedent suffered an accident arising out of and in the course of his employment and that his death was causally related thereto. NBC appeals.

We affirm. Initially, we reject the contention that the claim is barred by Workers' Compensation Law § 10. It is well settled that if a work-related injury causes "insanity", "brain derangement" *(Matter of Delinousha v National Biscuit Co.,* 248 NY 93, 94, 96) or "a pattern of mental deterioration" *(Matter of Reinstein v Mendola,* 39 AD2d 369, 371, *affd* 33 NY2d 589), which in turn causes suicide, death benefits may be awarded under Workers' Compensation Law § 10 *(see, Matter of Delinousha v National Biscuit Co., supra; Matter of McCarville v Williams, Stevens, McCarville & Frizzell,* 84 AD2d 639, *lv denied* 56 NY2d 502; *Matter of Gamble v New*

*York State Narcotics Addict Control Commn.,* 60 AD2d 703; *Matter of Avery v City of Middletown,* 40 AD2d 568 [dissenting mem], *revd on dissenting mem below* 33 NY2d 771; *Matter of Reinstein v Mendola, supra;* 1A Larson, Workmen's Compensation § 36.40; *cf., Matter of Vernum v State Univ. of N. Y., Coll. of Forestry,* 4 AD2d 722). "The question of whether a causal relationship exists between any particular work activity and an ensuing disability is an issue of fact for resolution by the [B]oard" *(Matter of Ottomanelli v Ottomanelli Bros.,* 80 AD2d 688, 688-689). Contrary to NBC's contention, the record does provide substantial evidence for the Board's conclusion that decedent's suicide was the result of a depressive condition which was causally related to stress in his employment.

Although decedent suffered from undiagnosed and untreated depression for 20 years prior to his death, the regularity of decedent's employment permitted him to keep the condition in check. However, the replacement of NBC's top-level management in 1978 brought about substantial changes for decedent. First, decedent was forced to carry a beeper, was subjected to frequent telephone calls at home from NBC president Fred Silverman, and began working many nights and weekends. Then, in April 1980, substantial changes took place in engineering department personnel and systems, and decedent's mid-level supervisor was replaced by an executive vice-president. Finally, on April 15, 1980 decedent was given a new title and new responsibilities, including operation of NBC's video tape library, a chronic problem area which had not functioned properly for decades.

As documented in suicide notes to decedent's wife and supervisor, these changes, particularly the responsibility for the tape library, finally drove decedent to take his own life because he could not face what he perceived as inevitable failure. Based upon the foregoing, claimant's psychiatric expert, Arthur Meisel, opined that decedent "became ill as a direct consequence of occupational pressures [and h]is death was work related and was secondary to stress caused by his job". Further, it was the opinion of the Board's impartial specialist, Joseph Sullivan, that although decedent's depressive illness arose from endogenous factors, "[s]tresses at work were * * * one factor which contributed to the depressed state or condition existing just prior to his suicide". Sullivan also opined that "[decedent's] suicide did not arise * * * from a voluntary decision, but arose from irrational forces set at work by his depressive condition".

The causal relationship between an industrial accident and

a resulting mental condition need not be direct and immediate. Rather, it is sufficient that the work stress be a "contributing cause" of the psychic injury *(Matter of Cerami v Rochester City School Dist.,* 148 AD2d 807, 809, *lv dismissed* 74 NY2d 792, 871; *Matter of Franzoni v Loew's Theatre & Realty Corp.,* 25 AD2d 453, *affd* 20 NY2d 889). Further, the fact that job stress merely precipitated decedent's preexisting mental condition does not bar a finding of causation *(see, Matter of Tobin v Steisel,* 64 NY2d 254, 259; *Matter of Cerami v Rochester City School Dist., supra).* Clearly, on this record the Board was entitled to weigh the conflicting evidence and find that a sufficient causal relationship existed between the job stresses suffered by decedent and the psychic injury which brought about his death *(see, Matter of Rackley v County of Rensselaer,* 141 AD2d 232, 234, *lv dismissed* 74 NY2d 791). Finally, we reject the contention that "positive" work stresses, such as those attendant to a promotion, may not trigger an accident *(cf., supra).*

Mahoney, P. J., Casey, Levine and Crew III, JJ., concur. Ordered that the decisions are affirmed, with costs to the Workers' Compensation Board.