**STATE of Wyoming, ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Appellant (Petitioner),**

v.

**Judy RAMSEY, surviving spouse of Steven Ramsey, Appellee (Respondent).**

**No. 91–244.**

Supreme Court of Wyoming.

Oct. 8, 1992.

Joseph B. Meyer, Atty. Gen., and J.C. DeMers, Sr. Asst. Atty. Gen., for appellant.

Phillip T. Willoughby, Casper, for appellee.

Before MACY, C.J., THOMAS, URBIGKIT * and GOLDEN, JJ., and PRICE, District Judge.

URBIGKIT, Justice.

Can a suicide become a compensable event for worker's compensation coverage? We answer the question in the affirmative in concurring with the decision of the administrative hearing officer which was affirmed upon first appellate review by the district court. Our decision employs the chain of causation test as the predominating principle on this subject within the volume of appellate cases. *See* Leslie A. Bradshaw, Annotation, *Suicide as Compensable Under Workmen's Compensation Act*, 15 A.L.R.3d 616, 631 (1967).

Steven R. Ramsey suffered a very severe 1988 industrial accident. He was eligible for and received worker's compensation benefits. His effort to receive compensation through a third-party culpable negligence case was not productive although pursued through appeal to this court. *Ramsey v. Pacific Power and Light*, 792 P.2d 1385 (Wyo.1990). Following the 1988 injury, regular medical care and a total disability status continued after the accident, including psychiatric care and use of anti-depressant medication. Mr. Ramsey was not able to resume any significant employment. It was Sunday, April 26, 1990, and the family had planned to go out for dinner. Mr. Ramsey excused himself from joining them, stayed home and committed suicide.

His widow, Judy Ramsey, appellee herein, applied for survivor benefits under worker's compensation, received an administrative denial, pursued the claim through hearing before the administrative hearing office and obtained a favorable reversal. The Wyoming Workers' Compensation Division took an appeal by a petition for review to the district court where the award benefit and favorable decision of the administrative hearing officer was affirmed. Dissatisfied, the Workers' Compensation Division has again appealed to now place benefit eligibility before this court.

Our review presents two coordinate but quite different questions: As a matter of law, can a suicide under Wyoming law ever trigger survivorship entitlement to benefits and, then, as a matter of fact, if the benefit should ever be available, is proper causative proof provided in this record? [1] The Workers' Compensation Division argues that the non-applied statutory bar to benefit eligibility is a legal error of the administrative hearing officer and the district court. The Workers' Compensation Division states the issues:

1. Does the suicide death of an Employee–Claimant need to meet the definition of injury under W.S. § 27–14–102(a)(xi), as supplemented by the Wyoming Workers' Compensation Division's rules and regulations, in order to be compensable?

2. Was there sufficient evidence to find that Employee–Claimant's death constituted a compensable injury within the definition of W.S. § 27–14–102(a)(xi) as supplemented by the Workers' Com-

* Chief Justice at time of oral argument.
1. The decision letter of the district court in appellate review stated in part:

A number of Courts recognize that benefits can be awarded where the evidence shows that, but for the injury, there would have been no suicide. *Matter of Death of Stroer*, 672 P.2d 1158 (Okla.1983). There was substantial evidence in this case to support the finding of the Administrative Law Judge that the suicide was caused by the work related injury.

The State also argues that recovery should be barred because the employee refused to submit to treatment reasonably necessary to promote his recovery. The burden is upon the State to show that this happened. The

evidence indicates that the State did not meet this burden. It is not clear that the employee refused treatment. He was still receiving treatment until just a few days before his death.

The facts of the initial accident are more comprehensively related in *Ramsey*, 792 P.2d 1385. Essentially, a pin not quite ten pounds in weight was dropped from an area about sixty-six feet above the injured worker's head and struck him. Mr. Ramsey was knocked to the ground falling about fourteen feet. His injury included three fractured vertebrate. Continued pain to the date of his death followed the resulting operations.

pensation Division's rules and regulations?

3. Was the hearing examiner correct in applying W.S. § 27–14–403 in determining the issue of compensability and, if so, was there sufficient evidence to find compensability under that statutory section?

Mrs. Ramsey restates in response:

1. Did the Administrative Law Judge err in finding substantial evidence that the death of Steve Ramsey was the direct result of his work related injury?

2. Did the Administrative Law Judge err in finding that the death of Steve Ramsey was a consequence of his injury and therefore compensable to his widow?

We address the legal issue first and recognize a Workers' Compensation Division rule which adopts and interprets statutory provisions to specifically deny compensability where an injury is followed by suicide. Wyoming Worker's Compensation Rules and Regulation Fee Schedule, ch. 1, § 2(a)(ix)(C), at 6 provides in part: "The term 'willful intention to injure' as used in the Act, shall also include the employee's suicide or attempted suicide."

Wyo.Stat. § 27–14–102(a)(xi) (1991) provides in part:

"Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. "Injury" does not include:

\* \* \* \* \* \*

(B) Injury caused by:

\* \* \* \* \* \*

(II) The employee's willful intention to injure or kill himself or another.

In consideration of the statute and the supplementing rule, the Workers' Compensation Division argues:

According to W.S. 27–14–102(a)(xi) II, " 'injury' does not include the employee's willful intention to injure or kill himself or another" or, under II(c), "injury due solely to the culpable negligence of the injured employee."

According to the Wyoming Workers' Compensation Rules, Regulations and Fee Schedule (Chapter I, Section 2(a)(ix)(C), p. 6 of the "Brown Book" effective October 28, 1989), "the term 'willful intention to injure' as used in the Act, shall also include the employee's suicide or attempted suicide." This prohibition against the compensability for suicide or attempted suicide has existed in the Wyoming Workers' Compensation rules since at least November 1, 1987, and has therefore not been altered or changed despite legislative consideration of the Act.

In addressing this topic, we simplify by examining whether a suicide, following a serious and totally disabling accident, can ever be compensable under the provisions of the Wyoming Worker's Compensation statute. Wyo.Stat. § 27–14–102(a)(xi).

■ Surprisingly, the Wyoming Supreme Court has not previously considered this well defined and clearly presented question. The Workers' Compensation Division, in arguing from analogy and practical policy, provides no case law from other jurisdictions. The argument is generally made by the Workers' Compensation Division that any of the available non-Wyoming decisions cannot come from jurisdictions which have dissimilar statutes. The comparison cases and the alternative statutes were not reviewed in briefing. *See, however,* Annotation, *supra,* 15 A.L.R.3d 616 and the near 100 cases cited therein specifically relating to this general and comprehensively litigated subject.

Mrs. Ramsey's appellate brief cites only one case, *Matter of Death of Stroer,* 672 P.2d 1158 (Okl.1983). In *Matter of Death of Stroer,* the court rejected absolute benefit preclusion and placed the burden upon claimant to prove the unbroken chain of causation from the event of compensable injury to a disturbance of mind which then

resulted in suicide. *Friedman v. NBC, Inc.*, 178 A.D.2d 774, 577 N.Y.S.2d 517 (N.Y.A.D.1991) provides a complete and equally logical direction of persuasion. In affirming the award, the court said:

> Initially, we reject the contention that the claim is barred by Workers' Compensation Law § 10. It is well settled that if a work-related injury causes "insanity", "brain derangement" (*Matter of Delinousha v. National Biscuit Co.*, 248 N.Y. 93, 94, 96, 161 N.E. 431) or "a pattern of mental deterioration" (*Matter of Reinstein v. Mendola*, 39 A.D.2d 369, 371, 334 N.Y.S.2d 488, *aff'd* 33 N.Y.2d 589, 347 N.Y.S.2d 455, 301 N.E.2d 438), which in turn causes suicide, death benefits may be awarded under Worker's Compensation Law § 10 (* * * 1A Larson, Workmen's Compensation § 36.40 * * *). "The question of whether a causal relationship exists between any particular work activity and an ensuing disability is an issue of fact for resolution by the [B]oard * * *" (*Matter of Ottomanelli v. Ottomanelli Bros.*, 80 A.D.2d 688, 688–689, 436 N.Y.S.2d 442 * * *).

*Friedman*, 577 N.Y.S.2d at 518.

Post-injury suicide has been the subject of substantial litigation and significant academic review. In addition to Annotation, *supra*, 15 A.L.R.3d 616, law journal consideration is found in *Suicide Under Workmen's Compensation Laws*, 12 Clev–Mar L.Rev. 26 (1963); Henry E. Sheldon II, Recent Case, *Workmen's Compensation— Suicide Compensable Where Causal Connection to Injury*, 31 U.Cin.L.Rev. 187 (1962); and *Arising Out of—Suicide Held Compensable Though Insane Employee Knew the Physical Consequences of his Suicidal Act—Liberal Construction*, 8 NACCA L.J. 46 (1951).

The courts have chosen one of four rules, the first and determinably the harshest is the *Sponatski* rule, *In re Sponatski*, 220 Mass. 526, 108 N.E. 466 (1915), which states:

> "[W]here there follows as the direct result of a physical injury an insanity of such violence as to cause the victim to take his own life through an uncontrollable impulse or in a delirium of frenzy 'without conscious volition to produce death, having knowledge of the physical consequences of the act,' then there is a direct and unbroken causal connection between the physical injury and the death. But where the resulting insanity is such as to cause suicide through a voluntary wilful choice determined by a moderately intelligent mental power which knows the purpose and the physical effect of the suicidal act even though choice is dominated and ruled by a disordered mind, then there is a new and independent agency which breaks the chain of causation arising from the injury."

Annotation, *supra*, 15 A.L.R.3d at 628–29. At least in A.L.R. review, it is considered that *In re Sponatski* was followed at one time by eleven states. Today, it is firmly established in only six (actually five). The annotation lists as present states that follow the *Sponatski* rule: Iowa, Missouri, Texas, Vermont and Washington. *Schofield v. White*, 250 Iowa 571, 95 N.W.2d 40 (1959); *Mershon v. Missouri Public Service Corp.*, 359 Mo. 257, 221 S.W.2d 165 (1949); *Saunders v. Texas Employers' Ins. Ass'n*, 526 S.W.2d 515 (Tex.1975); *McKane v. Capital Hill Quarry Co.*, 100 Vt. 45, 134 A. 640 (1926); *Mercer v. Department of Labor and Industries*, 74 Wash.2d 96, 442 P.2d 1000 (1968).[2]

The predominating and progressively adopted rule is the chain of causation principle found in both *Friedman* and *Matter of Death of Stroer*. One statement of the rule is "where the injury and its consequences directly result in the workman's loss of normal judgment and domination by a disturbance of the mind, causing the suicide, his suicide is compensable." Annotation, *supra*, 15 A.L.R.3d at 631.

---

2. The annotation also lists the state of New Jersey and provides as its citation *Kahle v. Plochman, Inc.*, 85 N.J. 539, 428 A.2d 913 (1981).

That case clearly adopted the chain of causation test and New Jersey can no longer be listed as a *Sponatski* jurisdiction.

The third rule, which is designated the New York rule and, coincidentally, is not specifically followed in *Friedman,* is generally a chain of causation test but with the possible requirement of physical damage to the brain itself. *Soileau v. Travelers Insurance Co.,* 198 So.2d 543 (La.App.1967); *Stapleton v. Keenan, Gifford & Lunn Apartment House Co.,* 265 N.Y. 528, 193 N.E. 305 (1934); *Delinousha v. National Biscuit Co.,* 248 N.Y. 93, 161 N.E. 431 (1928).

The fourth rule, designated the English rule, differs from the general chain of causation test in addressing the requirement that the "insanity must be the direct result of the injury itself or the shock produced by it, and not an indirect result caused by brooding over the injury and its consequences." Annotation, *supra,* 15 A.L.R.3d at 635. No American cases are cited in the annotation. *See Grime v. Fletcher,* 1 KB 734 (Eng.1915).

We agree with the district court in the first appellate review and adopt the chain of causation principle as most logical and supported by the current weight of persuasive precedent. Larson states the principle:

Suicide under the majority rule is compensable if the injury produces mental derangement and the mental derangement produces suicide. The minority rule, which is steadily losing ground, is that suicide is not compensable unless there has followed as the direct result of a work-connected injury an insanity of such severity as to cause the victim to take his own life through an uncontrollable impulse or in a delirium of frenzy without conscious volition to produce death.

1A Arthur Larson, *The Law of Workmen's Compensation* § 36.00 at 6–160 (1990).

The concept that ties the causal relationship, unbroken chain, cases together, is that the act causing death was an intervening act but not an intervening cause. *Harper v. Industrial Commission,* 24 Ill.2d 103, 180 N.E.2d 480 (1962) (citing *Whitehead v. Keene Roofing Co.,* 43 So.2d 464 (Fla.1949) and *Burnight v. Industrial Acc.*

*Commission,* 181 Cal.App.2d 816, 5 Cal. Rptr. 786 (1960)). *See* Sheldon, *supra,* 31 U.Cin.L.Rev. 187; Note, *Workmen's Compensation: Compensability of Suicide of Mentally Ill Employee,* 8 U.C.L.A.L.Rev. 673 (1961); and 1A Larson, *supra,* § 36.30 at 6–172, which discusses the causal connection rule.

In the developing predominance of jurisdictions with the same rule and case application, see as illustrative: *Wood v. Industrial Commission,* 108 Ariz. 50, 492 P.2d 1157 (1972); *Beauchamp v. Workmen's Compensation Appeals Bd.,* 259 Cal. App.2d 147, 66 Cal.Rptr. 352 (1968); *Jakco Painting Contractors v. Industrial Com'n of State of Colorado,* 702 P.2d 755 (Colo.App.1985); *Delaware Tire Center v. Fox,* 411 A.2d 606 (Del.Super.1980); *Jones v. Leon County Health Dept.,* 335 So.2d 269 (Fla.1976); *Wells v. Harrell,* 714 S.W.2d 498 (Ky.App.1986); *In re Lambert's Case,* 364 Mass. 832, 304 N.E.2d 428 (1973); *Meils by Meils v. Northwestern Bell Telephone Co.,* 355 N.W.2d 710 (Minn. 1984); *Schell v. Buell ECD Co.,* 102 N.M. 44, 690 P.2d 1038 (1983); *Hall v. State Workmen's Compensation Com'r,* 172 W.Va. 87, 303 S.E.2d 726 (1983); *Brenne v. Department of Industry, Labor and Human Relations,* 38 Wis.2d 84, 156 N.W.2d 497 (1968).

A reasonable similarity of statutory provisions can be extracted from many of these cases. With this legal precedent now provided and without countervailing case law submitted by the Workers' Compensation Division, we recognize the rationale and discern no preemptive statutory preclusion. Additionally, it follows that the rule preclusion adopted by the Workers' Compensation Division lacks required statutory justification to create the prohibition by rule when not authorized by statutory limitation. *Jackson v. State ex rel. Wyoming Worker's Compensation Div.,* 786 P.2d 874, 878 (Wyo.1990). Benefit approval then follows from our principle of favorable statutory construction to afford compensability since the enactment of worker's compensation statutes extinguished significant common law interests

for injury recovery to the disabled worker that might otherwise have existed. *Seckman v. Wyo–Ben, Inc.*, 783 P.2d 161 (Wyo. 1989); *Lehman v. State ex rel. Wyoming Workers' Compensation Div.*, 752 P.2d 422 (Wyo.1988). In general, "[o]ur scope of review in a workmen's compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence." *Andromalos–Dale v. W.C.A.B.*, 143 Pa.Cmwlth. 505, 599 A.2d 304, 305 (1991).

■ Consequently, another topic, factual in intrinsic examination, also requires our review. Does the record provide evidence upon which the administrative hearing officer was justified to make the factual decision required of the unbroken causal relationship? Evidentiary conflict in the factual details within the record, in particular between differing testimony of doctors, does exist. This court returns to a standard of review regarding factual determinations of the administrative agency requiring substantial evidence to support the factual decision. *Exxon Corp. v. Wyoming State Bd. of Equalization*, 783 P.2d 685 (Wyo.1989), *cert. denied* 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990). This court considers the decision of the worker's compensation hearing officer for the administrative agency appellate review to determine whether the decision is supported by substantial evidence. *Hohnholt v. Basin Elec. Power Co-op*, 784 P.2d 233 (Wyo.1989); *Claim of Grindle*, 722 P.2d 166 (Wyo.1986); *Shaw v. Lewmont Drilling Associates, Inc.*, 694 P.2d 117 (Wyo. 1985).

We agree with Mrs. Ramsey:

The circumstances of this case are clear. Steve Ramsey would not have committed suicide if not for his work place injuries. There were no pre-existing conditions that caused him to be susceptible or prone to suicide, there were not intervening conditions or situations that occurred between the time of his work place injury and his death, and Steve Ramsey continued to do all those things necessary to try and get well. But for the injury at the Wydak Power Plant, Steve Ramsey would not have committed suicide.

The most significant denial issue comes on a factual contention in the Workers' Compensation Division's denial argument that the injured worker *voluntarily* discontinued psychological treatment which then, as a self-inflicted injury, broke the otherwise established chain of causation. This argument addresses a contention that the nexus between injury and subsequent suicide is consequently missing if the real cause of the suicide was the discontinuance of the medical treatment and not the earlier disabling accident.

This court has in prior cases addressed in detail the causal connection—logical nexus—topic. Mrs. Ramsey asks the question: "Is the causal connection present?" She then answers that question:

"For an employee's injury to be compensable under the Workers' Compensation Act, there must be some logical nexus between injury and work, environment, working conditions, activity or other requirements of employment. *Claims of Nailer [Naylor]*, 723 P.2d 1237, 1241 (Wyo.1986)"

"An injury occurs under the statutory definition when the nexus test has been satisfied, regardless of whether it takes place on or off employee's premises. *Matter of Injury to Corean*, 723 P.2d 58 (Wyo.1956 [1986])"

"In order for the definition of 'injury' and the Workers' Compensation Act to be complied with, there need only be causal connection between the injury and course of employment. *Parker v. Energy Development Co.*, 691 P.2d 981 (Wyo. 1984)"

An examination of the evidence provided in this record does not require us to reverse the district court. Likewise, we do not now hold that the administrative hearing officer committed a fact finding error regarding the causal relationship between injury and death or that unwillingness of the worker to obtain medical care intervened under the circumstance proven to

"break the chain." *See* Wyo.Stat. § 27–14–407 (1991).[3] The administrative hearing officer was entitled to find, as she did from the evidence:

> Approximately 5 weeks prior to his death, the Employee–Claimant had been admitted [to] the Gottsche Center for pain management and treatment. Mrs. Ramsey testified that the clinic discontinued most of the Employee–Claimant's pain medication, and that his depression and pain increased afterwards.
>
> The weekend prior to his death, the Employee–Claimant stayed in Thermopolis at his mother's home, along with Mrs. Ramsey. He began to complain of severe neck pain on Friday night; Saturday morning he telephoned Dr. Metz, who gave him an injection for the pain Saturday afternoon in Casper. The Employee–Claimant and his wife returned to Thermopolis, where Saturday night the Employee–Claimant was up all night and could not sleep due to pain.
>
> Mrs. Ramsey testified that Sunday the family watched some television; that her husband seemed to still be in pain, but that he appeared to be in control. The family was to have dinner with her parents, but the Employee–Claimant said he didn't feel up to it and stayed home. Soon after everyone had left for dinner, the Employee–Claimant went into the bathroom and shot himsel[f] in the head with a rifle.

\* \* \* \* \* \*

The record in this case also establishes that the Employee–Claimant was under continued medical treatment for his neck and back injury until the time of his death. He was in constant pain, taking a variety of pain medications or receiving injections for minimal relief. The Employee–Claimant had been receiving Total Temporary Disability benefits from Workers Compensation, and he had not been released to return to work, nor had his condition stabilized for any Permanent Partial Disability rating.

I find that the injury sustained by the Employee–Claimant on May 27, 1988 was the cause of his depression, despair and pain, and those factors were the cause of the Employee–Claimant's death.

Further, the pain, depression, and despair were of such degree as to override normal and rational judgment by the Employee–Claimant. The Employee–Claimant's suicide, committed under such circumstances, is not an "intentional and willful" act, which would be an independent, intervening act, to break the chain of causation and bar a claim for death benefits.

This court addresses the two decisive questions by adoption of the chain of causation principle for determination of benefit eligibility after a seriously disabling injury is followed by suicide with recognition that no preclusive Wyoming statutory bar has been enacted. This court then concurs, under our standard of review, that substantial evidence exists to sustain the benefit award decision of the administrative hearing officer. That decision was factually supported in finding the existence of an unbroken chain of causation.

Affirmed.

---

**3.** Wyo.Stat. § 27–14–407 states:

> If an injured employee knowingly engages or persists in an unsanitary or injurious practice which tends to imperil or retard his recovery, or if he refuses to submit to medical or surgical treatment reasonably essential to promote his recovery, he forfeits all right to compensation under this act. Forfeiture shall be determined by the hearing examiner upon application by the division or employer.