2002 WY 121

In the matter of The Worker's Compensation Claim of Lynn J. BRIERLEY, Appellant (Petitioner),

v.

STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).

No. 01–166.

Supreme Court of Wyoming.

Aug. 14, 2002.

that resulted in the attempted suicide. Our review of the entire record reveals that Brierley received a diagnosis that his physical condition had caused a major depression, which had "adequate symptoms to stand alone as a DSM–IV diagnosis." Brierley was also diagnosed with anxiety and pain disorder consistent with standards found in the DSM–IV. The diagnosis was made by a licensed clinical psychologist who later testified that it was probable and logically sound to find that the injury that had caused Brierley's pain and depression resulted in the attempted suicide. This clear and convincing evidence proves that Brierley's attempted suicide was the result of a mental injury suffered subsequent to a compensable physical injury.

[¶ 2]   We reverse and remand for entry of an order granting benefits.

## ISSUES

[¶ 3]   Brierley presents this issue for our review:

> The Hearing Examiner's conclusion that Lynn J. Brierley failed to prove his self-inflicted gunshot wound was a direct and proximate result of his compensable work related injuries of March 28, 1999 was arbitrary, capricious and not in accordance with law in that it was clearly contrary to the overwhelming weight of the evidence.

The Division rephrases the issue as:

> Did Appellant's compensable injury produce a mental injury so severe that his suicide attempt was not a willful act?

## FACTS

[¶ 4]   On March 28, 1999, Brierley sustained compensable, work-related injuries to his lumbar spine and lower back while acting within the course and scope of his duties as a boilermaker for his employer, I.P.C. Industrial Power, at the Jim Bridger Power Plant in Sweetwater County, Wyoming. Since then he has suffered chronic and unrelenting pain as a direct result of his work-related injuries and has been unable to work. His

Kennard F. Nelson of Kirkwood Nelson Schilling & Winn, P.C., Laramie, Wyoming, Representing Appellant.

Hoke MacMillan, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; David L. Delicath, Assistant Attorney General, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN *, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1]   After suffering a compensable injury in 1999, Appellant Lynn J. Brierley suffered chronic, intense pain. In 2000, he unsuccessfully attempted suicide, inflicting injuries that generated medical costs. Brierley filed claims for these costs and for temporary disability benefits, which Appellee Workers' Compensation Division denied. After a contested case hearing, the hearing examiner upheld the denial of benefits, concluding that Brierley failed to prove his compensable injury caused a mental injury

* Chief Justice at time of expedited conference

treating physician, Dr. Bosworth, a family practitioner, diagnosed him as suffering from a depression caused by the pain from his work-related injuries. On April 5, 2000, Brierley was referred for a psychological examination to obtain an opinion whether he was a suitable candidate for back surgery. Brierley was examined by Dr. Hart, Ph.D., a licensed clinical psychologist, and, during an interview with Dr. Hart, Brierley described his physical and mental conditions and stated he had suicidal thoughts. In a written report that was admitted at the hearing, Dr. Hart made the following statement; however, this statement was not referred to by the hearing examiner in its findings of fact and conclusions of law:

> After integrating the data obtained through my review of the medical record with the insights from my clinical interview and the results of the psychometric testing, I have arrived at the following psychological diagnoses.
>
> 1. *Anxiety Disorder, NOS. The DSM–IV code is 300.0.* This diagnosis allows for a mixed condition of depression and anxiety. Typically, it is used when neither construct meets all the criteria. I am using it in a different sense in that I believe Mr. Brierley has vulnerability to psychological intensity and anxiousness, but his physical condition has exacerbated that vulnerability and brought on a major depression, which, in fact, does have adequate symptoms to stand alone as a DSM–IV diagnosis. I am wanting to show the interconnection between these two psychological conditions by using this present DSM–IV 300.00 diagnosis. I should note the severity of these symptoms puts him in the moderate to severe range. Presently, the condition is severe with respect to depression.
>
> 2. *Pain Disorder Associated with Psychological Factors and a Medical Condition. The DSM–IV code is 307.89. The ICD.9 code is 724.4.*

Dr. Hart's final opinion was that Brierley was not a good candidate for back surgery.

[¶ 5] On June 9, 2000, Brierley shot himself in the abdomen, inflicting injuries that he survived. He filed a claim for medical and temporary total disability benefits that was denied by the Division. The matter then went to hearing. In its findings of fact, the hearing examiner stated the parties' positions: Brierley contended the self-inflicted gunshot wound injuries were caused by his work-related injuries and compensable under Wyo. Stat. Ann. § 27–14–102(a)(xi), while the Division contended the gunshot injuries were the result of his willful intent to injure or kill himself and, therefore, were not compensable under Wyo. Stat. Ann. § 27–14–102(a)(xi)(B)(II).

[¶ 6] Dr. Bosworth appeared at the hearing and testified. The hearing examiner found that, although Dr. Bosworth was not a licensed psychiatrist or clinical psychologist, Dr. Bosworth's opinion was that, to a reasonable degree of medical probability, the claimant's chronic pain and inability to return to work caused or substantially contributed to the claimant's becoming depressed. Dr. Hart did not testify at the hearing, but a transcript of an earlier deposition containing Dr. Hart's testimony was entered into evidence. Relying upon a portion of Dr. Hart's deposition testimony, the hearing examiner found that Dr. Hart was unable to opine with "any reasonable degree of psychological probability that the claimant's self-inflicted gunshot wound was the direct result of his work-related back injury." The hearing examiner quoted the following:

> There's a linkage there that you could make inferentially, but I'm not sure I can go clear back to that. I believe that his suicide gesture was due to depression and anxiousness associated with his failure— his perception of his inability to care for his family and function as a whole man. I believe that those thoughts came from the pain experiences that he had secondary to a very bad, bad back, a back which I believe was not just caused by a single incident.

The hearing examiner does not quote the entire statement but skips to this:

> Now, the logic flows in that sequence of things, since I've already ruled out the fact that he had not had major depression in the past, at least I didn't have documentation of that and I don't think anybody else has, either, that he didn't have collateral

problems along the way, other than financial pressures which may have been the result of not being able to work which may have been the result of pain. Then the pain, the inability to function, the depression, the suicide gesture. But you've got to make that connection. I can't just link, automatically say, hey, he killed himself because he's got pain because of an injury.

In its conclusions of law, the hearing examiner stated:

6. In *State ex rel. Wyoming Workers' Compensation Division v. Ramsey*, 839 P.2d 936 (Wyo.1992), the Supreme Court held that an employee's suicide is compensable if a work-related injury "produces mental derangement and the mental derangement produces suicide." *Id.* at 940, quoting 1A Larson, *The Law of Workmen's Compensation §* 36.00 at 6–160 (1990). If still good law, however, the claimant failed to produce sufficient evidence to prove that his work-related injury produced mental derangement.

7. After *Ramsey, supra*, the legislature amended W.S. § 27–14–102(a)(xi) to provide, in pertinent part, that: "Injury" does not include any mental injury unless it is caused by a compensable physical injury, it occurs subsequent to or simultaneously with, the physical injury and **it is established by clear and convincing evidence, which shall include a diagnosis by a licensed psychiatrist or licensed clinical psychologist meeting criteria established in the most recent edition of the diagnostic and statistical manual of mental disorders published by the American Psychiatric Association.**

In this case, however, the claimant failed to prove by clear and convincing evidence that his compensable work-related injury caused a compensable mental injury that, in turn, caused the self-inflicted gunshot wound. After weighing the evidence and opinions of Dr. Bosworth and Dr. Hart, the Office concludes that the claimant has failed to prove that his self-inflicted gunshot wound was the direct and proximate result of his compensable work-related injuries of March 28, 1999.

(Emphasis added.) Benefits were denied, and this appeal followed.

## DISCUSSION

### Standard of Review

[¶ 7] Judicial review of agency action is governed by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2001):

To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

* * *

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

* * *

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

*Sechrist v. State ex rel. Wyo. Workers' Safety and Comp. Div.,* 2001 WY 45, ¶ 7, 23 P.3d 1138, ¶ 7 (Wyo.2001).

[¶ 8] The interpretation and correct application of the provisions of the Wyoming Workers' Compensation Act are questions of law over which our review authority is plenary. Conclusions of law made by an administrative agency are affirmed only if they are in accord with the law. We do not afford any deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law. *State ex rel. Wyo. Workers' Safety and Comp. Div. v. Garl,* 2001 WY 59, ¶ 8, 26 P.3d 1029, ¶ 8 (Wyo.2001).

[¶ 9] We recently held that the substantial evidence test is the appropriate standard

of review in appeals from Wyoming Administrative Procedures Act (WAPA) contested case proceedings when factual findings are involved and both parties submit evidence. *Newman v. Wyo. Workers' Safety and Comp. Div.*, 2002 WY 91, ¶ 22, 49 P.3d 163, ¶ 22 (Wyo.2002). We further held that when only the party with the burden of proof submits evidence in the contested case proceeding and that party does not ultimately prevail, the arbitrary or capricious standard governs the judicial review of that agency decision. *Id.* Even if the factual findings are found to be supported by substantial evidence, the ultimate agency decision may be found to be arbitrary or capricious for other reasons. *Id.* at ¶ 23. We do not examine the record only to determine if there is substantial evidence to support the board's decision, but we must also examine the conflicting evidence to determine if the hearing examiner could have reasonably made its finding and order upon all of the evidence before it. *Id.* at ¶ 24, ¶ 25. Because only Brierley presented a case-in-chief, we apply the arbitrary and capricious standard.

### *Statutory Interpretation*

[¶ 10] The State contends that the plain language of Wyo. Stat. Ann. § 27–14–102(a)(xi)(B)(II) requires this Court's overruling *Ramsey* and holding that the legislature intended that any injury resulting from a suicidal act is not compensable. Our well-established rules of statutory interpretation were recently summarized to be:

We decide initially whether the statute is clear or ambiguous. This Court makes that determination as a matter of law. If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute. In effectuating the plain language of the statute, we begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute *in pari materia*. If, on the other hand, we determine that the statute is ambiguous, we resort to general principles of statutory construction to determine the legislature's intent.

*Sechrist*, ¶ 10.

[¶ 11] In the part of the statute referenced by the Division, the statute provides:

(xi) "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extra hazardous duties incident to the business. **"Injury" does not include:**

(A) Any illness or communicable disease unless the risk of contracting the illness or disease is increased by the nature of the employment;

**(B) Injury caused by:**

(I) The fact the employee is intoxicated or under the influence of a controlled substance, or both, except any prescribed drug taken as directed by an authorized health care provider; or

**(II) The employee's willful intention to injure or kill himself or another.**

Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2001) (emphasis added).

Brierley relies upon a subsequent part of that same statutory provision, subsection (J), which was first enacted in 1994 after the *Ramsey* decision and provides:

"Injury" does not include:

\* \* \* \*

(J) Any mental injury unless it is caused by a compensable physical injury, it occurs subsequent to or simultaneously with, the physical injury and it is established by clear and convincing evidence, which shall include a diagnosis by a licensed psychiatrist or licensed clinical psychologist meeting criteria established in the most recent edition of the diagnostic and statistical manual of mental disorders published by the American Psychiatric Association. In

no event shall benefits for a compensable mental injury be paid for more than six (6) months after an injured employee's physical injury has healed to the point that it is not reasonably expected to substantially improve.

[¶ 12] This particular provision requires the claimant to prove by clear and convincing evidence that the compensable physical injury caused the mental injury. *Sechrist*, ¶ 11.[1] We agree with the hearing examiner's conclusions that *Ramsey* decided that suicide is compensable "if the injury produces mental derangement and the mental derangement produces suicide," and that this holding applies to attempted suicide. The State's contention that *Ramsey* ignored legislative intent and should be overruled would require that we ignore the plain intent of the latter legislative amendment, which we are prohibited from doing. Additionally, we are required to harmonize all parts of the statute. Plainly, the meaning of "injury does not include ... [i]njury caused by ... [t]he employee's willful intention to injure or kill himself or another" refers to those situations preceded by or simultaneous with a compensable physical injury.

[¶ 13] The State contends that *Ramsey* was the result of the disfavored liberal construction rule. As we explained in *Wilkinson v. State ex rel. Wyoming Workers' Safety and Compensation Div.*, 991 P.2d 1228, 1242 (Wyo.1999), the rule of liberal construction of a statute in favor of the claimant is applied when the statute at issue is silent as to the issue presented and precedes the legislature's 1994 amendment to the preamble of the workers' compensation statutes. Therefore, our statutory construction in this case "should be accomplished to afford coverage wherever that end may be achieved without unreasonably extending the clear language of the statute." *Id.* (quoting *Wright v. Wyo. Workers' Safety and Comp. Div.*, 952 P.2d 209, 211 (Wyo.1998)). After the effective date of the current statute, workers' compensation statutes can no longer be interpreted in favor of coverage but will be interpreted in a way that gives effect to the legislative intent and preserves the historic compromise between workers and employers. *State ex rel. Wyo. Workers' Safety and Comp. Div. v. Summers*, 987 P.2d 153, 157 (Wyo.1999). Our conclusion in this case, however, is driven by the plain language of the statute. Thus, the rule of liberal construction does not come into play. This statute is not silent as to the issue presented and must be interpreted in accordance with its plain language to effectuate legislative intent. *Moller v. State ex rel. Wyo. Workers' Safety and Comp. Div.*, 12 P.3d 702, 706 (Wyo.2000).

### Failure of Proof

[¶ 14] We recently held that whether the employee has shown by a preponderance of evidence that he has received a diagnosis satisfying the statute's specific requirements, a diagnosis by a licensed psychiatrist or psychologist that meets the criteria for that mental disorder in the specified manual by the American Psychiatrists Association, presents a question of fact. The different burden of proof mandated by the statutory language applies to the provision's requirement that the employee show by clear and convincing evidence that he has suffered a compensable mental injury caused by a compensable physical injury. *Sechrist*, ¶ 11. Here, the hearing examiner heard the testimony of Dr. Bosworth, a treating physician, whose opinion was that, to a reasonable degree of medical probability, the claimant's chronic pain and inability to return to work caused or substantially contributed to the claimant's becoming depressed. The hearing examiner then had the written report of Dr. Hart's psychological diagnoses of major depression combined with anxiety, a diagnosis commonly considered more serious than just that of depression, and pain disorder with both diagnoses made in accordance with the statutory requirements. Finally, the hearing examiner had the deposition testimony of Dr. Hart. We shall again quote the part of that testimony that the hearing examiner found significant; howev-

---

1. Subsection (j) requires that the evidence establish a diagnosis by the proper authority in accordance with the criteria of the DSM–IV. *Sechrist* held that this requirement of subsection (j) could be established by a preponderance of the evidence.

er, because its meaning changes when read in context, we quote it in more depth:

> There's a linkage there that you could make inferentially, but I'm not sure I can go clear back to that. I believe that his suicide gesture was due to depression and anxiousness associated with his failure—his perception of his inability to care for his family and function as a whole man. I believe that those thoughts came from the pain experiences that he had secondary to a very bad, bad back, a back which I believe was not just caused by a single incident. But when you've got degenerative disk disease from L2 clear to the sacrum, you've had a whole series of battering your back to death.
>
> And so I believe his pain is a function of a whole series of things exacerbated by a specific injury, pulling out those welding rods. And that led to the whole process of evaluating treatment options and care as accepted by the Worker's Comp program. And then, at some point, I guess—I don't know—he's probably declared MMI and sent on his way.
>
> That he couldn't function physically as he had in the past led to the depression. That inability to function mixed with his own perception of what he needed to be as a man, which was preexisting kind of perception of life, led to his suicide gesture.
>
> Now, the logic flows in that sequence of things, since I've already ruled out the fact that he had not had major depression in the past, at least I didn't have documentation of that and I don't think anybody else has, either, that he didn't have collateral problems along the way, other than financial pressures which may have been the result of not being able to work which may have been the result of pain. Then the pain, the inability to function, the depression, the suicide gesture. But you've got to make that connection. I can't just link, automatically say, hey, he killed himself because he's got pain because of an injury.

\* \* \* \*

Q. Okay. And understanding that, Doctor, that I'm not asking for a guarantee, I'm asking you, based upon what is most probable, the most probable scenario based upon your experience, your training, your interviews and testing of Mr. Brierley, and your review of the records from the University of Utah Medical Center, whether or not the chain of events set in motion by the injury of March 28 of 1999 are the cause of Mr. Brierley's suicide attempt.

A. Having worked in the workers' compensation field for 11 years, that argument is more supported than refuted. There is more probability that the injury was a major component to the pain, to the dysfunction and inability to work, to the depression, to the anxiety. And then because he was not psychologically strong enough, for one reason or another, he thought, I guess, that he needed to take his life. So the logic is pretty sound, probably more on the likelihood to be that scenario than not.

"Clear and convincing evidence is something more than a preponderance, but less than proof beyond a reasonable doubt. It is the kind of proof that would persuade a trier of fact that the truth of the contention is highly probable." *Bando v. Clure Bros. Furniture*, 980 P.2d 323, 329 (Wyo.1999) (citation omitted). When presented with medical opinion testimony, the hearing examiner, as the trier of fact, is responsible for determining relevancy, assigning probative value, and ascribing the relevant weight to be given to the testimony. *Id.* "In weighing the medical opinion testimony, the fact finder considers: (1) the opinion; (2) the reasons, if any, given for it; (3) the strength of it; and (4) the qualifications and credibility of the witness or witnesses expressing it." *Id.* at 329–30.

[¶ 15] In the order denying benefits, the hearing examiner stated that Brierley had failed to prove by clear and convincing evidence that his compensable work-related injury caused a mental injury that, in turn, caused the self-inflicted gunshot wound, and that, after weighing the evidence and opinions of Dr. Bosworth and Dr. Hart, the hearing examiner concluded that the claimant had failed to prove that his self-inflicted gunshot wound was the direct and proximate result of

his compensable work-related injuries of March 28, 1999.

[¶ 16] When, as here, a hearing examiner decides that the only party presenting evidence and charged with the burden of proof has failed to meet that burden, the case is reviewed under the "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" standard of § 16–3–114(c)(ii)(A). *Newman,* at ¶ 22. The hearing examiner, as the trier of fact, is charged with weighing the evidence and determining the credibility of witnesses. *Id.* at ¶ 26, ¶ 31. A hearing examiner's findings of fact are accorded deference, and the hearing examiner's decision will not be overturned unless it is clearly contrary to the overwhelming weight of the evidence. *Id.* Demonstrating evidentiary contradictions in the record does not establish the ruling was irrational, but we do examine conflicting evidence to determine if the agency reasonably could have made its finding and order based upon all of the evidence before it. *Bando,* 980 P.2d at 331.

[¶ 17] Dr. Bosworth stated unequivocally that Brierley's compensable injury caused pain and depression that led to the suicide attempt. Dr. Hart's lengthy opinion, reduced to its essence, was "that the truth of the contention is highly probable," which satisfies the clear and convincing standard. The hearing examiner's decision is based upon only a portion of the evidence before it and is contrary to the overwhelming weight of the evidence. The order denying benefits is reversed and remanded for entry of an order granting benefits.