55 P.3d 4 (2002)
2002 WY 140
Roland C. BRYANT, Appellant (Petitioner),
v.
STATE of Wyoming, ex rel., WYOMING DEPARTMENT OF TRANSPORTATION, Appellee (Respondent).
No. 01-146.
Supreme Court of Wyoming.
September 25, 2002.
*6 R. Michael Vang of Brown, Nagel & Hiser, LLC, Laramie, WY, Representing Appellant.
Hoke MacMillan, Attorney General; Rowena L. Heckert, Deputy Attorney General; and Mary L. Loos, Assistant Attorney General, Representing Appellee.
Before HILL, C.J., and GOLDEN, LEHMAN,[*] and VOIGT, JJ., and BRACKLEY, D.J.
LEHMAN, Justice.
[¶ 1] Appellant Roland Chester Bryant appeals from the district court's affirmance of the Office of Administrative Hearing (OAH) order, which sustained the implied consent suspension of his driver's license as well as the disqualification of his commercial driver's license.
[¶ 2] We affirm.

ISSUES
[¶ 3] Bryant offers the following issues for our consideration:
1. Did the Hearing Examiner err when she indicated that the arresting officer did not need to have proof that he was certified to operate an approved chemical test pursuant to Wyoming Statute § 31-6-105(a), *7 because the Licensee refused a preliminary breath test?
2. Can a person be considered a refusal for not taking a portable breath test (PBT), if the PBT is not an approved chemical test under the regular and commercial implied consent laws?
Appellee Wyoming Department of Transportation (WyDOT) presents its own issues:
1. When Appellant has refused to submit to chemical testing under the implied consent statutes, must the arresting officer provide evidence of his certification to operate the testing device for the license suspension to be valid?
2. Is there substantial evidence in the record to prove that Appellant refused chemical testing under the implied consent statutes for non-commercial and commercial drivers?

FACTS
[¶ 4] At approximately 10:54 p.m. on December 10, 1999, Wyoming State Highway Patrol Officer N.M. Bisceglia clocked a semi-truck driven by Bryant at 95 mph in a posted 75 mph speed zone. As Officer Bisceglia turned onto the interstate to follow the truck, he observed Bryant fail to signal a lane change. Officer Bisceglia activated his overhead lights, but it took approximately another one-quarter mile before Bryant reacted to the officer's flashing lights and pulled over. As Bryant pulled the truck to the right, he ran over a delineator post and stopped with the left side of the truck remaining on the traveled portion of the highway. Officer Bisceglia requested various documents from Bryant, including his driver's license, and Bryant provided all the requested documentation. Officer Bisceglia summoned Bryant to his patrol car. While Bryant was in Officer Bisceglia's car, Officer Bisceglia noticed an odor of alcohol on Bryant's breath and noted that his eyes were watery and bloodshot. When Officer Bisceglia asked Bryant if he had been drinking, Bryant replied that he had consumed a bottle of Vicks 44-D.
[¶ 5] Officer Bisceglia asked Bryant to perform standardized field sobriety tests so that he could assess whether Bryant was able to drive safely. Bryant agreed to perform the Horizontal Gaze Nystagmus (HGN) test, and when he did, Officer Bisceglia observed all three indicators of intoxication, specifically lack of smooth pursuit, distinct nystagmus prior to 45 degrees, and distinct nystagmus at maximum deviation. When Officer Bisceglia asked Bryant to perform a preliminary breath test, Bryant refused, stating that he would show up on the test because he had consumed the Vicks 44-D. He subsequently refused to perform any more sobriety tests. He also refused to submit to chemical testing. Officer Bisceglia informed Bryant that he had reason to believe that he was intoxicated and placed him under arrest for driving while under the influence of intoxicants (DWUI). When Officer Bisceglia inventoried the truck's contents, he discovered a bottle of rum that was approximately two-thirds empty underneath the bed of the sleeper. He did not find any bottles of cold medication.
[¶ 6] In his signed statement, Officer Bisceglia indicated under penalty of perjury that he had read Bryant the following advisements and that Bryant nevertheless refused to submit to any chemical testing:
Implied Consent Advisement: ...
I read the Implied Consent Advisement to the driver according to W.S. 31-6-102 for a Non-Commercial Offense.
I read the Implied Consent Advisement to the driver according to W.S. 31-6-102 & 31-7-307 for a Commercial Offense.
...
Chemical Test: ...
The driver was requested to submit to the chemical test(s) prescribed by my agency but refused to do so.
Bryant subsequently signed a Refusal form, which provided in part:
2. You have been advised by a peace officer of the requirement to submit to all chemical tests and that your failure to do so shall result in a suspension of your driver's license or your privilege to operate a motor vehicle.
[¶ 7] As a result of Bryant's refusal to submit to chemical testing, WyDOT notified Bryant of its intent to suspend his driver's *8 license for six months and to disqualify his commercial license for one year. Bryant requested a contested case hearing, and the OAH heard the case on March 15, 2000. Bryant was the sole witness to testify, and he claimed that he did not remember being informed of the potential one-year penalty for refusing to consent to chemical testing under the commercial disqualification statute. He also testified that although he signed the Refusal form after he was arrested, he did not remember being given the specific implied consent advisements. The OAH sustained the implied consent suspension and the commercial disqualification. Bryant filed a timely petition for judicial review with the district court. After analyzing the record and the briefs of the parties, the district court affirmed the OAH's decision, and this appeal followed.

STANDARD OF REVIEW
[¶ 8] Our review of proceedings that involve the suspension of a driver's license is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2001), which provides in pertinent part:
(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
...
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
...
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
[¶ 9] We do not afford any special deference to the district court's decision when we review a matter initiated before an administrative agency. Rather, this court reviews the case as if it came directly from the administrative agency. Nellis v. Dep't of Transp., 932 P.2d 741, 743 (Wyo.1997). Our review must focus on the evidence and consider the reasonableness of the agency's exercise of judgment while determining if the agency committed errors of law. Casper Iron & Metal, Inc. v. Unemployment Ins. Comm'n, 845 P.2d 387, 392 (Wyo.1993). If the agency committed any errors of law, this court must correct them. State v. Bannon Energy Corp., 999 P.2d 1306, 1308 (Wyo. 2000).
[¶ 10] Further, in appeals where both parties submit evidence at the administrative hearing, appellate review is limited to application of the substantial evidence test. Newman v. State ex rel. Workers' Safety and Compensation Div., 2002 WY 91, ¶ 22, 49 P.3d 163, ¶ 22 (Wyo. 2002). This court is required to review the entire record in making its ultimate determination on appeal. Newman, at ¶ 19 and ¶¶ 24-26. The substantial evidence test to be applied is as follows:
In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.
Newman, at ¶ 12 (quoting State ex rel. Workers' Safety and Compensation Div. v. Jensen, 2001 WY 51, ¶ 10, 24 P.3d 1133. ¶ 10 (Wyo.2001).
[¶ 11] Even when the factual findings are found to be sufficient under the substantial evidence test, Newman further concludes this court may be required to apply the arbitrary-and-capricious standard as a "safety net" to catch other agency action which prejudiced a party's substantial right to the administrative proceeding or which might be contrary to the other WAPA review *9 standards. A purely demonstrative listing is provided of situations which could warrant the consideration of the arbitrary-and-capricious standard in addition to the substantial evidence test.[1]Newman, at ¶ 23. However, this appeal presents no such unique circumstances.
[¶ 12] To answer the issues presented in this case, we must interpret the relevant statutes. We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making "an inquiry respecting the ordinary and obvious meaning of the words employed, according to their arrangement and connection." Rasmussen v. Baker, 7 Wyo. 117, 133, 50 P. 819, 823 (1897); see also State Dep't of Rev. & Taxation v. Pacificorp, 872 P.2d 1163, 1166 (Wyo. 1994).
When the court determines, as a matter of law, that a statute is clear and unambiguous, it must give effect to the plain language of the statute and should not resort to the rules of statutory construction. If, on the other hand, the Court determines that a statute is ambiguous, it may use extrinsic aids of statutory interpretation to help it determine the legislature's intent.
State ex rel. Workers' Safety & Compensation Div. v. Bruhn, 951 P.2d 373, 376 (Wyo. 1997) (citations omitted).

DISCUSSION

A. Proof of a Valid Permit
[¶ 13] Bryant first argues that both the non-commercial and commercial implied consent suspensions must be vacated. He maintains that the record contains no evidence that Officer Bisceglia provided any proof to demonstrate that he possessed a valid permit to conduct chemical testing pursuant to Wyo. Stat. Ann. § 31-6-105(a) (LexisNexis 2001). WyDOT counters that when Bryant refused to submit to chemical testing under the implied consent statutes, evidence of Officer Bisceglia's certification to operate the testing device became irrelevant. Bryant does not challenge any of the hearing examiner's findings. We must, therefore, determine whether the hearing examiner's conclusions of law are in accordance with the law.
[¶ 14] Bryant relies upon Wyo. Stat. Ann. § 31-6-105(a) in making his argument. That section provides:
(a) Chemical analysis of the person's blood, breath or urine to be considered valid under this section, shall be performed according to methods approved by the department of health and by an individual possessing a valid permit to conduct the analysis. Permits shall be issued by the department of health for this purpose. The department of health may promulgate and approve satisfactory methods in order to ascertain the qualifications of individuals permitted to conduct the analysis and shall issue to qualified individuals permits which are subject to termination or revocation by the department of health.
Both parties assert that this statute is clear and unambiguous. We agree. We must therefore apply its plain meaning.
We read a statute so that every word, clause and sentence is given effect so, if possible, no part of the statute is rendered inoperative or superfluous. In construing the statute, our main objective is to effectuate the intent of the legislature.
Bolack v. Chevron, U.S.A. Inc., 963 P.2d 237, 241 (Wyo.1998) (citations omitted).
[¶ 15] While we agree with Bryant that the plain language of this statute requires testing to be performed by an individual who possesses a valid permit to conduct the analysis, we do not see where it requires the arresting officer to provide evidence that he or she possesses a valid permit as a prerequisite to testing the individual. This is especially true when no tests are performed because testing is refused. Our analysis of Wyo. Stat. Ann. § 31-6-105(a) convinces us that the plain and ordinary meaning of the statute requires testing to be performed by a person who possesses a valid permit, who may or may not be the arresting officer, only when a chemical analysis of a person's blood, breath, or urine is actually performed. Because *10 the testing was never performed, the question of whether Officer Bisceglia, or whomever would have conducted the test, possessed a valid permit is irrelevant.

B. Proof of Approved Testing Method
[¶ 16] Bryant next asserts that both the implied consent suspension and commercial disqualification must be vacated because Officer Bisceglia failed to provide proof that he offered Bryant a chemical test approved by the department of health (DOH) pursuant to Wyo. Stat. Ann. § 31-6-105(a), which is quoted in our discussion of the last issue. Bryant does not challenge the accuracy of Officer Bisceglia's sworn statement, but instead focuses on the language in the Officer's Signed Statement, which states that "[t]he driver was requested to submit to the chemical test(s) prescribed by my agency but refused to do so." Bryant maintains that this language demonstrates that Officer Bisceglia merely requested Bryant to submit to chemical tests prescribed by the Wyoming Highway Patrol, not necessarily those prescribed by the DOH. We agree with Bryant that the "Officer's Signed Statement" does not indicate that he was specifically offered and refused tests prescribed by the DOH. However, we have not found any law that requires WyDOT to demonstrate that Bryant was offered a chemical test approved of by the DOH in this situation.
[¶ 17] Wyo. Stat. Ann. § 31-6-102 (LexisNexis 2001) provides authority for driver's license suspensions when someone has refused to submit to chemical testing:
(i) Any person who drives or is in actual physical control of a motor vehicle upon a public street or highway in this state is deemed to have given consent ... to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcohol concentration ... of his blood....
...
(ii) For tests required under this act, the arrested person shall be advised that:
(A) His failure to submit to all required chemical tests requested by the peace officer shall result in the suspension of his Wyoming driver's license or his privilege to operate a motor vehicle for a period of six (6) months for a first offense...
...
(D) If he refuses to take all required tests, he shall not be eligible for limited driving privileges.
...
(d) If a person under arrest refuses upon the request of a peace officer to submit to a chemical test designated by the agency employing the peace officer as provided in subsection (a) of this section, none shall be given except in cases where serious bodily injury or death has resulted. The peace officer shall submit his signed statement to the department. The statement submitted by the officer shall contain:
...
(ii) That the person refused to submit to a test upon the request of the peace officer.
For purposes of this case, the requirements under Wyo. Stat. Ann. § 31-7-307 (LexisNexis 2001) for commercial disqualifications are virtually identical.
[¶ 18] Bryant complains that nothing in the record indicates what type of chemical tests Officer Bisceglia's agency prescribes. What the record does show, however, is that Officer Bisceglia gave Bryant the implied consent advisement required under Wyoming law, and Bryant refused to submit to chemical testing as required. Bryant cannot establish that any chemical analysis of his blood, breath or urine would not have been performed according to methods approved of by the DOH because he refused chemical testing. The question of whether the tests were approved arises once the test is performed, not before.
[¶ 19] Finally, the Refusal form that Bryant signed included the following advisement:
You have been advised by a peace officer of the requirement to submit to all chemical tests and ... your failure to do so shall result in a suspension of your driver's license or your privilege to operate a motor vehicle.
Bryant's refusal to submit to all chemical tests necessarily included those authorized by the DOH.
*11 [¶ 20] We hold that substantial evidence supported the hearing examiner's decision to uphold the six month implied consent suspension of Bryant's driver's license as well as its decision to uphold the one-year commercial license disqualification.
[¶ 21] Affirmed.
NOTES
[*] Chief Justice at time of expedited case conference.
[1] For example, the administrative record may be replete with evidence supporting the decision, and yet the agency may have willfully discounted credible evidence, refused to admit certain testimony or documentary exhibits, or failed to provide findings of fact or conclusions of law." Newman, at ¶ 23.