2006 WY 29

**In the Matter of the Worker's Compensation Claim of:**

David E. OLIVAS, Appellant (Petitioner),

v.

STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).

No. 05–79.

Supreme Court of Wyoming.

March 16, 2006.

---

Representing Appellant: David M. Gosar of Jackson, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; and Michael N. Thatcher, Student Intern. Argument by Mr. Thatcher.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

HILL, Chief Justice.

[¶1]   David E. Olivas (Olivas) suffered a work-related injury, and temporary total disability benefits were approved. After receiv-

ing a permanent partial impairment rating, he applied for permanent partial disability benefits. The Workers' Safety and Compensation Division (the Division) denied benefits on the grounds that Olivas had not been actively seeking work. After a contested case hearing, a hearing examiner upheld the denial of benefits. The district court affirmed and Olivas has appealed to this Court. We conclude that the order denying benefits is facially insufficient to permit review; we reverse the district court's order affirming, and remand to vacate the order denying benefits.

## ISSUES

[¶ 2] Olivas sets out three issues for review:

ISSUE I: Did the OAH err as a matter of law by impliedly rejecting Mr. Olivas's position that, because *NO* jobs were available to him that paid 95% of his monthly gross earnings at the time of injury, he qualified for permanent partial disability benefits? As a matter of law, if Employee–Claimant searches for "suitable employment" and discovers that no jobs exist that pay 95% of his previous earnings, and this fact is confirmed by the credible testimony of Employee–Claimant and an employment advisor, and furthermore, the Division stipulates that this element of the claim is not disputed, is he required to apply for lesser paying jobs in order to satisfy the "actively sought suitable work" portion of the permanent partial disability statutes, W.S. § 27–14–405(B)(III)?

ISSUE II: Did the OAH err as a matter of law by rejecting Employee–Claimant's position that enrollment in full time vocational retraining met the "actively sought suitable work" requirement of W.S. § 27–14–405(B)(III)?

ISSUE III: Is the Order Denying Benefits supported by substantial evidence, or is the decision arbitrary and capricious, due to the following:

1. Mr. Olivas met the actively seeking work requirement because he was employed full time when the evidentiary hearing was held. This employment was in the field in which he obtained vocational retraining.

2. An essential finding was not supported by substantial evidence. The OAH erroneously determined that Mr. Olivas testified that he would not accept any employment that interfered with his schooling when, in fact, Mr. Olivas testified that he would have accepted employment that paid $20 per hour—an amount approximately 80% of his monthly gross earnings at the time of injury.

3. The OAH erroneously determined that Mr. Olivas was not actively seeking work when no work was available to him that paid 95% of the $25 per hour he was making at the time of injury.

4. The OAH erroneously determined that Mr. Olivas was not actively seeking work when it failed to recognize that attending vocational retraining full time satisfies this requirement.

5. The OAH's determination that Mr. Olivas was not actively seeking work is contrary to the substantial evidence presented regarding his persistent and sustained efforts to find employment.

The Division responds with a statement of two issues:

Issue I: Whether substantial evidence supports the hearing examiner's finding that Olivas was not actively seeking suitable work?

Issue II: Whether the hearing examiner's decision denying benefits is in accordance with law?

## FACTS

[¶ 3] In November of 2000, Olivas suffered a work-related injury to his shoulders while employed as a miner for FMC Corporation in Rock Springs, Wyoming. In March of 2001, Olivas was awarded temporary total disability benefits. Believing that his injury

foreclosed any future in the mining industry, Olivas accepted a severance package ending his employment with FMC on April 29, 2001. In August, Olivas moved to New Mexico. In December, a functional capacity evaluation concluded that Olivas could not physically perform the tasks associated with his former employment, and that he was able to work at just above a medium level with restrictions on using his arms above shoulder height. In January of 2002, Olivas began taking classes at the Albuquerque Technical Vocational Institute (ATVI) training to become a heating and cooling service technician.

[¶ 4] Olivas filed three applications for permanent partial disability (PPD) benefits.[1] The first application was filed on January 25, 2002. In the application, Olivas checked the "no" box in response to the question, "Are you currently registered with Job Service?" On an attached form where the claimant could set forth his work search record, Olivas handwrote a note indicating that he was attending school to learn a new trade as he could no longer medically perform his former job, and that there were no other mining jobs available in the Albuquerque area. The application was denied because Olivas had not received a permanent partial impairment rating as required by Wyo. Stat. Ann. § 27–14–405(g) (LexisNexis 2005) and the Division's Rules and Regulations.

[¶ 5] After obtaining an impairment rating, Olivas filed a second application on September 20, 2002. Again, Olivas indicated in the application that he was not currently registered with Job Service. On the attached form for his work search record, Olivas wrote the following:

I am currently attending a Junior College in Albuquerque, New Mexico to study a new trade. As per my Dr. I can no longer do my old job as a miner, that I've done for the past 28 years.

Upon request I can send you verification of my school records and anything else that you might need to process this claim.

P.S. As a full time student (13 credit hrs.) I have not seeked [sic] other employment.

The Division issued a Final Determination denying benefits because Olivas had not been actively seeking work as required by Wyo. Stat. Ann. § 27–14–405(h)(iii) (LexisNexis 2005). Olivas did not object to that determination.

[¶ 6] This proceeding arose out of Olivas's third application for PPD benefits. The application was filed on August 4, 2003. This time, Olivas checked the "yes" box to the question regarding whether he had registered with Job Service. On the work search record form, Olivas listed six employers he had contacted and filed applications for employment with on July 23 or 26, 2003. The Division issued a Final Determination on August 11, 2003, denying the application for PPD benefits. Again, the Division concluded that Olivas was not actively seeking work as required by Wyo. Stat. Ann. § 27–14–405(h)(iii).

[¶ 7] Olivas filed his objection and a contested case hearing was held on March 25, 2004. Prior to the hearing, the parties stipulated that the only question was whether or not Olivas had actively sought employment and that he otherwise met all conditions for receiving PPD benefits. Both parties presented evidence: Olivas through exhibits and

---

1. The statutory provisions relevant to Olivas's claims for PPD benefits are found in Wyo. Stat. Ann. § 27–14–405(g) and (h) (LexisNexis 2005):

(g) An injured employee's impairment shall be rated by a licensed physician using the most recent edition of the American Medical Association's guide to the evaluation of permanent impairment. The award shall be paid as provided by W.S. 27–14–403 for the number of months determined by multiplying the percentage of impairment by forty-four (44) months.

(h) An injured employee awarded permanent partial impairment benefits may apply for a permanent disability award subject to the following terms and conditions:

(i) The injured employee is because of the injury, unable to return to employment at a wage that is at least ninety-five percent (95%) of the monthly gross earnings the employee was earning at the time of injury;
(ii) An application for permanent partial disability is filed not before three (3) months after the date of ascertainable loss or three (3) months before the last scheduled impairment payment, whichever occurs later, but in no event later than one (1) year following the later date; and
(iii) The employee has actively sought suitable work, considering the employee's health, education, training and experience.

the testimony of two witnesses (including himself), and the Division through exhibits. Olivas testified that initially after arriving in Albuquerque, he registered with the New Mexico Department of Labor and began searching the newspapers and internet for jobs. However, Olivas decided to go to school to obtain vocational training for a new career because there were no mining jobs in the Albuquerque area, his physical limitations foreclosed employment in the construction industry, and his skills were not otherwise transferable to any other area thus leaving him qualified for minimum wage type jobs only. Olivas testified that, while in school, he continued his job search activities: He checked the newspaper and would go to the placement center at the school three times a week to check the job listings. He also noted that he remained registered with the Department of Labor where he would use his account to access on-line job listings. Olivas admitted that he did not consider minimum wage type jobs because he wanted to continue with his schooling. He claimed that he would have taken a job that paid $20.00 an hour and that he even applied for two of those jobs but was unqualified and not hired. At one point, Olivas testified that he had contacted his former Wyoming employer to see if it had work available within his physical restrictions, but was told that no jobs were available.

[¶ 8] On cross-examination, Olivas declared that he looked for part-time, as well as full-time jobs, but admitted that his schooling was his first priority and finding a job was secondary. With respect to his failure to mark "yes" to the question about registering for Job Service on his first two applications or list any job search efforts, Olivas claimed that he was confused by the application and that he mistakenly believed that he did not need to fill out that part of the application because he was searching for jobs on-line.[2] At one point, Olivas declared that he had no intention of quitting school to take a job, although he later stated that if something appealing in a part- or full-time capacity had come up, he would have taken it.

[¶ 9] Theresa Torres was an employment advisor at ATVI during the time that Olivas was a student. She testified that Olivas was in the placement center two to three times a week for a year to a year and a half. Torres helped Olivas look for all types of employment including part-time, full-time, as well as short and long term. She described Olivas as "extremely diligent and very focused" on his job search but noted that there were no jobs that paid $20.00 an hour or more for which Olivas was qualified, and that any jobs that paid less would have conflicted with his schooling.

[¶ 10] On April 23, 2004, the hearing examiner issued an Order Denying Benefits concluding that "applying for only six positions in more than two years [was] not a systematic sustained work [search] effort." Olivas filed a Petition for Review of the hearing examiner's decision with the district court, which affirmed. His appeal is now before this Court.

**STANDARD OF REVIEW**

[¶ 11] In a contested case hearing the burden of proving all the essential elements of a claim for workers' compensation benefits rests upon the claimant. *Phillips v. TIC–The Industrial Company of Wyoming, Inc.*, 2005 WY 40, ¶ 25, 109 P.3d 520, 531 (Wyo.2005); *In re Worker's Compensation Claim of Johnson*, 2001 WY 48, ¶ 7, 23 P.3d 32, 35 (Wyo.2001). This Court does not afford any special deference to the district court's decision reviewing the agency decision. Rather, we review the case as if it had come directly from the administrative agency. *Bush v. State ex rel. Wyoming Workers' Compensation Division*, 2005 WY 120, ¶ 4, 120 P.3d 176, 178–79 (Wyo.2005). The scope of our review is dictated by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005):

> To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency

2. A document was admitted showing that Olivas had been registered with the New Mexico De-partment of Labor's Albuquerque Workforce Development Center since November of 2001.

action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

> (i) Compel agency action unlawfully withheld or unreasonably delayed; and
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> (B) Contrary to constitutional right, power, privilege or immunity;
>
> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
>
> (D) Without observance of procedure required by law; or
>
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

When both parties present evidence in a contested case proceeding and factual findings are made, the appropriate standard of review is the substantial evidence test. *Newman v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 2002 WY 91, ¶ 22, 49 P.3d 163, 171 (Wyo.2002).

> We afford respect and deference to a hearing examiner's findings of fact if they are supported by substantial evidence. Our task is to examine the entire record to determine whether substantial evidence supported the hearing examiner's findings. We will not substitute our judgment for that of the hearing examiner when substantial evidence supports his decision. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. A hearing examiner's conclusions of law are afforded no special deference and will be affirmed only if truly in accord with law.

*Salas v. General Chemical*, 2003 WY 79, ¶ 9, 71 P.3d 708, ¶ 9 (Wyo.2003) (citations

omitted). * * * A claimant for worker's compensation benefits has the burden of proving all the essential elements of the claim by a preponderance of the evidence in the contested case hearing. *Salas*, ¶ 9.

> Even when the factual findings are found to be sufficient under the substantial evidence test, ... this court may be required to apply the arbitrary and capricious standard as a "safety net" to catch other agency action which prejudiced a party's substantial right to the administrative proceeding or which might be contrary to the other WAPA review standards.

*State ex rel. Department of Transportation v. Legarda*, 2003 WY 130, ¶ 10, 77 P.3d 708, ¶ 10 (Wyo.2003) citing *Bryant v. State ex rel. Department of Transportation*, 2002 WY 140, ¶¶ 9–11, 55 P.3d 4, ¶¶ 9–11 (Wyo.2002) (citations omitted.)

*Abeyta v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 2004 WY 50, ¶ 5, 88 P.3d 1072, 1074–75 (Wyo.2004).

## DISCUSSION

[¶ 12] The parties' arguments center on whether or not the hearing examiner's conclusion that Olivas had failed to prove that he had "actively sought suitable work" as required by Wyo. Stat. Ann. § 27–14–405(h)(iii) was supported by substantial evidence. We need not make that determination today because the hearing examiner's findings of fact and conclusions are insufficient to permit an adequate review of the order denying benefits.

[¶ 13] Recently, we have stressed that:

> A hearing officer is required to support his conclusions with adequate findings of fact. Wyo. Stat. Ann. § 16–3–110 (LexisNexis 2005). A hearing officer has "the duty to make findings of basic facts upon all of the material issues in the proceeding and upon which its ultimate findings of fact or conclusions are based. Unless that is done there is no rational basis for judicial review." *Pan Am. Petroleum Corp. v. Wyoming Oil and Gas Conservation Comm'n*, 446 P.2d 550, 555 (Wyo.1968). In

order for this Court to have a rational basis upon which to conduct a review:

> All of the material evidence offered by the parties must be carefully weighed by the agency as the trier of the facts; conflicts in the evidence must be resolved, and the underlying or basic facts which prompt the ultimate conclusion on issues of fact drawn by the agency in sustaining the prima facie case made, or in rejecting it for the reason it has been satisfactorily met or rebutted by countervailing evidence, must be sufficiently set forth in the decision rendered.

*Id.* at 557.

*Bush,* ¶ 9, 120 P.3d at 180; *see also Decker v. State of Wyoming ex rel. Wyoming Medical Commission,* 2005 WY 160, ¶ 27, 124 P.3d 686, 695 (Wyo.2005).

██ [¶ 14] Pursuant to the parties' stipulation, the statutory context in which Olivas's claim was to be resolved is exclusively found in Wyo. Stat. Ann. § 27–14–405(h)(iii), which states that a claimant is eligible to receive PPD benefits if they have "actively sought suitable work" with that requirement conditioned on a consideration of the claimant's "health, education, training and experience." At the time Olivas's claim arose, the Division's Rules and Regulations defined "actively sought work" to mean:

> For purposes of benefit eligibility, an individual is actively seeking work if they:
>
> (i) Have engaged in a systematic and sustained effort to obtain work;
>
> (ii) Registers for work and continues to report to a department office in effort to obtain suitable employment;
>
> (iii) Are available for suitable employment;

(iv) Furnishes the department with tangible evidence of their effort; *or*

(v) Have contacted the employer from the time of injury to inquire if they have work available within their medically documented restrictions.

Wyoming Workers' Compensation Division, Rules, Regulations and Fee Schedules, Chapter 1, Section 4(x) (Oct.1999).[3] The burden was on Olivas to establish by a preponderance of the evidence that he actively sought suitable work considering his health, education, training, and experience. The hearing examiner concluded that Olivas had failed to meet that burden:

> This Office is sympathetic to Olivas's argument that he faced the unenviable choice of searching for and accepting inadequate employment or completing college to better his life. This Office commends Olivas for his choice to better himself and his family; however, this Office cannot ignore the express language of the Wyoming Statutes or the rules and regulations. Olivas would clearly qualify for vocational rehabilitation benefits, but did not apply for such. This issue before this Office was PPD benefits and whether Olivas sought employment. This Office finds applying for only six positions in more than two years is not a systematic sustained work effort. Olivas admitted completing college was his first priority and he would not have accepted any employment, which interfered with his classes or the necessary study time. The Legislature and the Division have expressly required a claimant be actively engaged in seeking employment when applying for PPD. Olivas was attending college and not actively seeking employment. Accordingly, the Division Final

---

3. The Division's rules currently define "actively seeking work" as follows:

> For purposes of benefit eligibility, a claimant is actively seeking work if the claimant provides tangible evidence of the work search to the Division. Completion of the work search form will be considered tangible evidence. The work search must contain a minimum of five contacts per week over the course of a six week period. The six week period must be immediately *preceding* the date the application is filed with the Division *or* immediately *following* the date the application is filed with the

Division. The contacts listed on the work search must be made for work the claimant is reasonably qualified to perform and is willing to accept. Actions that would be considered an active search for employment include completing job applications, faxing or mailing resumes (include proof), or visiting the employers in person. [Emphasis in rule.]

3 Weil's Code of Wyoming Rules, Wyoming Workers' Compensation Division, Rules, Regulations and Fee Schedules of the Wyoming Workers' Safety and Compensation Division, Chapter 1, Section 4, Definitions, 025 220 00–1 (2005).

Determination Denying Benefits must be upheld.

[¶ 15] The hearing examiner's conclusions are inadequate for several reasons. First, the hearing examiner failed to completely analyze whether Olivas was "actively seeking work" as that phrase was defined in the Division's Rules and Regulations. When determining the meaning of administrative rules and regulations, we apply the same analysis used to interpret statutory language. *State ex rel. Wyoming Department of Revenue v. UPRC*, 2003 WY 54, ¶ 12, 67 P.3d 1176, 1182–83 (Wyo.2003).

> In interpreting statutes, our primary consideration is to determine the legislature's intent. *Fontaine v. Board of County Comm'rs*, 4 P.3d 890, 894 (Wyo. 2000); *State ex rel. Motor Vehicle Div. v. Holtz*, 674 P.2d 732, 736 (Wyo.1983). Legislative intent must be ascertained initially and primarily from the words used in the statute. *Allied–Signal, Inc. v. State Board of Equalization*, 813 P.2d 214, 219 (Wyo.1991); *Phillips v. Duro–Last Roofing, Inc.*, 806 P.2d 834, 837 (Wyo.1991). When the words are clear and unambiguous, a court risks an impermissible substitution of its own views, or those of others, for the intent of the legislature if any effort is made to interpret or construe statutes on any basis other than the language invoked by the legislature. *Allied–Signal*, 813 P.2d at 219.
>
> . . . .
>
> Therefore, in performing our review, we look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. *Olheiser v. State ex rel. Worker's Compensation Div.*, 866 P.2d 768, 770 (Wyo.1994) (citing *Parker Land & Cattle Company v. Game & Fish Comm'n*, 845 P.2d 1040, 1042–43 (Wyo.1993)). A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. *Parker Land & Cattle*, at 1043. Conversely, a statute is ambiguous

if it is found to be vague or uncertain and subject to varying interpretations. *Id* .... Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court. *Allied–Signal*, 813 P.2d at 219.

*UPRC*, at *Id.*; (quoting *McClean v. State*, 2003 WY 17, ¶ 6, 62 P.3d 595, 597–98 (Wyo. 2003)). The word "or" is used in the rule defining "actively sought work" to separate the fourth and fifth alternatives listed. In the construction of statutes, the word "or" is usually used in the disjunctive sense, and "when two [or more] clauses are expressed in the disjunctive, this generally indicates alternatives, requiring separate treatment." *Basin Electric Power Cooperative v. State Board. of Control*, 578 P.2d 557, 566 (Wyo. 1978) (citing *Matter of Adoption of Voss*, 550 P.2d 481, 485 (Wyo.1976)); *see also Giles v. State*, 2004 WY 101, ¶ 46, 96 P.3d 1027, 1043 (Wyo.2004). The word "or" will be used in a conjunctive sense (i.e., interchangeable with the word "and") only when it is necessary to harmonize provisions of a statute. *Amoco v. Board of Commissioners of Carbon County*, 876 P.2d 989, 993 (Wyo.1994). In this case, there is no need to harmonize the provisions of the Rule, and the word "or" is taken in this context in its disjunctive sense with each clause in the Rule being "considered separately, without requiring that the subjects [of each] be satisfied".[4] *Basin Electric Power Cooperative*, 578 P.2d 557, 566. Here, the hearing examiner's only stated reason for denying benefits was that Olivas's six applications for employment in the two years since his work-related injury did not constitute "a systematic sustained work effort." This, of course, is a reference to the first alternative set out in the Division's rule defining "actively seeking work." The hearing examiner failed to make any findings of fact or conclusions related to the other alternatives provided under the rule. Since Olivas had to make the requisite showing under only one of the alternatives to meet his burden of proof to demonstrate that he had actively sought work and thus qualified for

---

4. The Division implicitly concedes this interpretation of the rule when it asserts in its brief that "Olivas failed to provide sufficient evidence that

he satisfied any of these methods of 'actively seeking work.' "

PPD benefits, the hearing examiner's failure to do so renders his order denying benefits inadequate.

[¶ 16] In addition, our ability to review the hearing examiner's decision is further compromised by the hearing examiner's failure to make findings of fact and conclusions regarding all of the material evidence offered by Olivas. If this evidence had been considered and deemed credible, Olivas may have met his burden of proof and demonstrated that he had actively sought work. For example, Olivas testified that even after he began attending school, he had remained registered with New Mexico's equivalent of Wyoming's Job Service, and that he continued to check the newspaper listings and on-line postings, as well as visit the placement center at ATVI two to three times a week to check on available jobs. Olivas testified that these efforts continued over approximately a two-year period and that despite those efforts, he claimed there were no available jobs for which he was qualified except minimum wage fast food type jobs. The hearing examiner failed to make any findings or conclusions regarding this testimony. If Olivas was deemed credible, then a finder of fact could possibly conclude that Olivas's efforts constituted "a sustained and systematic effort to obtain work" considering his "education, training and experience." Wyo. Stat. Ann. § 27–14–405(h)(iii) and Wyoming Workers' Compensation Division Rules, Regulations and Fee Schedules, Ch. 1, Section 4. Further, Olivas testified that he contacted his former employer, where he had been working when he suffered his compensable injury, and inquired whether or not it had any work available within his physical restrictions. Olivas was informed that there were no jobs available. Again, if deemed credible, this testimony would apparently qualify Olivas for PPD benefits under subsection (v) of the Division's rule defining "actively sought work." The hearing examiner did not make any findings or conclusions regarding this testimony either. There are other examples that we need not delineate here. The consequence is that the hearing examiner's findings of fact and conclusions are simply not adequate to permit us to effectively review the order denying benefits.

[¶ 17] Compounding the problem, we note that the hearing examiner made no findings or conclusions regarding Olivas's credibility as a witness. The hearing examiner is the trier of fact and, accordingly, is charged with weighing the evidence and determining the credibility of witnesses. *KG Construction, Inc. v. Sherman*, 2005 WY 116, ¶ 23, 120 P.3d 145, 150 (Wyo.2005). Indeed, it is the hearing examiner's responsibility to do so. *Ikenberry v. State ex rel. Wyoming Workers' Compensation Division*, 5 P.3d 799, 809 (Wyo.2000). A hearing examiner's determination of credibility will not be overturned unless it is clearly contrary to the overwhelming weight of the evidence. *Brierley v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 2002 WY 121, ¶ 16, 52 P.3d 564, 571 (Wyo.2002). Though supplemented with documentary exhibits, Olivas's case that he actively sought work and thus qualified for PPD benefits rested largely upon his own testimony. The only mention of Olivas's credibility by the hearing examiner came in the Findings of Fact: "Olivas credibly testified his physical limits prevented him from obtaining employment in the construction industry." The hearing examiner clearly found Olivas to be a credible witness, at least to some degree. Nevertheless, no other findings or conclusions are made regarding credibility. Given the nature of the evidence presented by Olivas, however, the necessary implication of the hearing examiner's decision denying benefits was that Olivas was not a credible witness. This Court is not in a position to make determinations regarding the credibility of witnesses. The determination of the weight and credibility of the evidence is assigned by law to the administrative agency as trier of fact, and it is not within this Court's prerogative to perform that duty. *Leavitt v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 980 P.2d 332, 335 (Wyo. 1999) (citing *McGuire v. McGuire*, 608 P.2d 1278 (Wyo.1980)). Unlike us, the hearing examiner has observed the witnesses and listened to their testimony leaving him "in the best position to judge the demeanor, truth and veracity of witnesses and to decide which evidence is most dependable." *Id.* (cit-

ing *State ex rel. Wyoming Worker's Compensation Division v. Colvin,* 681 P.2d 269, 271 (Wyo.1984)). We "will not overturn the hearing examiner's determinations regarding witness credibility unless they are clearly contrary to the overwhelming weight of the evidence." *Taylor v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2005 WY 148 ¶ 8, 123 P.3d 143, 146 (Wyo. 2005) (quoting *Boyce v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2005 WY 9, ¶ 6, 105 P.3d 451, 454 (Wyo.2005)). The hearing examiner's failure to set out ***why*** Olivas was not a credible witness (if, in fact, that was his conclusion) inhibits our ability to properly perform our review on appeal. When the resolution of a claim for benefits rests largely, if not exclusively, on an assessment of a claimant's credibility, a hearing examiner's failure to make findings regarding the claimant's credibility on the record renders an effective review of the order denying benefits impossible.

[¶ 18] We have noted that whether a claimant has "actively sought suitable work" is qualified by a requirement that the claimant's efforts be considered within the context of his "health, education, training and experience." Wyo. Stat. Ann. § 27–14–405(h)(iii); *see also Abeyta,* 88 P.3d at 1076. The question the hearing examiner must answer on remand is whether or not Olivas met his burden of proof and showed that, considering his education, training, and experience, there was no suitable work available for him.

## CONCLUSION

[¶ 19] Under the facts of this case, the hearing examiner's failure to make a determination regarding the weight and credibility of Olivas's testimony, coupled with the failure to consider all of the material evidence offered, renders its order denying benefits insufficient to permit appellate review. Accordingly, we reverse and remand the matter to the district court with instructions to vacate the order denying benefits and remand to the Office of Administrative Hearings for further findings consistent with this opinion.