2008 WY 117

### In the Matter of the Workers' Compensation Claim of Ronald A. BUSH, Appellant (Employee/Petitioner),

v.

### STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Objector/Respondent).

No. S–07–0226.

Supreme Court of Wyoming.

Oct. 7, 2008.

ing her arguments inapt.

Representing Appellant: David M. Gosar of Jackson, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; Kristi M. Radosevich, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1]   This is an appeal from the district court's affirmance of an Order of the Office of Administrative Hearings (OAH) denying the appellant's claim for worker's compensation benefits.  We will affirm because the decision of the hearing examiner was not unsupported by substantial evidence.

## ISSUES

[¶ 2]   1.  Did the appellant fail timely to report an injury to his employer and fail timely to report an injury to the Wyoming Workers' Safety and Compensation Division?

2.  Was the hearing examiner's decision that the appellant failed to prove that his injury was work-related unsupported by substantial evidence?

## FACTS

[¶ 3]   In the summer of 2002, the appellant worked for Riverton Ready Mix.  On Wednesday, July 3, 2002, the appellant left work early—at 12:30 p.m.—with his employer's permission.  That afternoon and evening, he worked as a sound technician for a local band.  The next morning, he drove a car in a local parade.  He returned to work on Monday, July 8, which was the next regular work day, and worked that full week.  On the following Saturday, July 13, he drove two rounds in a demolition derby, entering and exiting the vehicle by sliding out through the vacant front windshield area and stepping to the ground.

[¶ 4]   Interspersed among these events were certain "medical events" that underlie the present controversy.  After the parade on July 4, the appellant went to the hospital emergency room complaining of an injured ankle.  The emergency room record indicates that the appellant reported injuring his ankle just prior to arrival when he stepped out of a truck.  X-rays did not reveal the ankle to be broken or dislocated, leaving the emergency room physician, Dr. Jarrard, to conclude that the ankle was sprained.  The doctor told the appellant he could go to work if he felt capable of doing so.

[¶ 5]   The appellant returned to work on Monday, July 8, and reported to his supervisor, Steven Harless, that the ankle injury occurred at about 9:00 a.m. on Wednesday, July 3, when he stepped out of a work truck.  On Thursday, July 11, or Friday, July 12, the appellant's fiancée made an appointment for him with Dr. Michael Ford, an orthopedic surgeon, for Monday, July 15.  During that appointment, Dr. Ford diagnosed torn ligaments and widening of the ankle mortise.[1]  He surgically corrected those injuries on July 19.

[¶ 6]   The Division did not receive the accident report forms until July 23.  The delay resulted from the appellant's belief that the forms could not be sent in until the employer's section was completed, and Harless's belief that completion of the employer's section constituted an admission that the injury was work-related.  At any rate, the Division issued its Final Determination on August 5, denying benefits because (1) the injury was not proven to be work-related, as required by Wyo. Stat. Ann. § 27–14–102(a)(xi) (LexisNexis 2007); (2) the injury was not reported to the employer within the 72–hour time limit of Wyo. Stat. Ann. § 27–14–502(a); and (3) the injury report was not filed with the Division within the 10–day time limit of Wyo. Stat. Ann. § 27–14–502(a).

[¶ 7]   The appellant objected to the Final Determination and requested a hearing. The Division then referred the matter to the OAH. The hearing took place on December 12, 2002, and an Order Denying Benefits was

---

1.   The ankle mortise is "[t]he seating for the talus formed by the union of the distal fibula and the tibia at the ankle joint."  *Stedman's Medical Dictionary* 1132 (27th ed.2000).

issued on February 18, 2003. The hearing examiner found and concluded that the appellant had not timely reported the injury to his employer, had not timely filed the injury report with the Division, and had failed to prove that the injury was work-related.

[¶ 8] The appellant next filed in the district court a Petition for Review of Administrative Action, dated March 11, 2003. The district court reviewed the record presented to it, along with the parties' briefs, and on August 2, 2004, affirmed the decision of the hearing examiner on the grounds that (1) factual findings were supported by substantial evidence; (2) no agency action was shown to be arbitrary or capricious; and (3) the appellant had failed to meet his burden of proving by a preponderance of the evidence that his injury was work-related. The appellant appealed that decision to this Court on August 20, 2004.[2]

[¶ 9] Our opinion in the first appeal of this case did not reach the merits. In *Bush v. State ex rel. Workers' Compensation Division*, 2005 WY 120, ¶¶ 12–13, 120 P.3d 176, 180–81 (Wyo.2005) (*Bush I* ), we concluded that the hearing officer's order did not contain adequate findings to support its conclusions, so we remanded the matter to the district court for further remand to the OAH for supplemental findings and entry of a new order. That new order was entered by the OAH on March 27, 2006. The appellant again petitioned for review in the district court, the OAH order again was affirmed, and the appellant again appealed to this Court.

### DISCUSSION

*Did the appellant fail timely to report an injury to his employer and fail timely to report an injury to the Wyoming Workers' Safety and Compensation Division?*

[¶ 10] Wyo. Stat. Ann. § 27–14–502(a) provides that an injured employee must report the "general nature of the accident or injury" to his or her employer within 72 hours "after the general nature of the

injury became apparent." The same statutory subsection requires an injured employee to file an injury report with the Division within ten days "after the injury became apparent." Subsection (c) of the same statute provides that failure to do both of these tasks results in "a presumption that the claim shall be denied." *See Wesaw v. Quality Maint. (In re Worker's Comp. Claim)*, 2001 WY 17, ¶ 14, 19 P.3d 500, 506 (Wyo.2001). To overcome the presumption, the employee must show by clear and convincing evidence that the delay prejudiced neither the employer nor the Division "in investigating the injury and in monitoring medical treatment." *Id.* at ¶ 12, at 505.

[¶ 11] In its first Order Denying Benefits, the OAH found that the appellant did not report the injury to his employer within 72 hours and did not file an injury report with the Division within 10 days of the apparent injury. In its conclusions of law, the OAH then detailed the time limits of Wyo. Stat. Ann. § 27–14–502(a) and the presumption of Wyo. Stat. Ann. § 27–14–502(c). None of this, however, appeared to factor into the denial of the claim. In any event, that Order was vacated by our decision in *Bush I*, 2005 WY 120, ¶ 13, 120 P.3d at 181.

[¶ 12] In the second go-round, the hearing examiner entered a more fully detailed Order in which benefits were denied solely based upon the conclusion that the appellant had not met his burden of proving that the injury was work-related. The issues of timely reporting and timely filing are not even mentioned in the Order and apparently had no bearing upon the decision to deny benefits. Nor was timeliness raised by the district court in affirming the Order of the OAH. That, no doubt, is why the appellant did not raise the issue in his current appellate brief.

[¶ 13] The Division contends, to the contrary, that the issue of timeliness survives, and is before this Court, because it was a basis for decision in the Final Determination and was listed as an issue in the Notice of Referral for Hearing. We do not agree.

---

2. These dates are correct. We discovered nothing in the record that explains the district court ruling following the filing of the petition by seventeen months.

Even though the hearing examiner did not provide an additional hearing upon remand, the Division still had the opportunity to raise in the district court the hearing examiner's failure to address timeliness in the second OAH Order, and it did not do so. Because untimely reporting and filing create only an evidentiary presumption, rather than a lack of subject matter jurisdiction, we need not raise or consider the issue. It is our determination that, if the issue did survive the first go-round, the Division waived it below in the second go-round.

### Was the hearing examiner's decision that the appellant failed to prove that his injury was work-related unsupported by substantial evidence?

[¶ 14] W.R.A.P. 12.09(a) directs us to Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2007) for the matters to be considered in the review of administrative action. We recently said the following with regard to the standard of review when we are required to examine the evidentiary findings of an agency:

> Section 16–3–114(c)(ii) provides only one evidentiary standard of review. Under the plain language of the statute, reversal of an agency finding or action is required if it is "not supported by substantial evidence." Because contested case hearings under Wyoming's Administrative Procedures Act, are formal, trial-type proceedings, use of the substantial evidence standard for review of evidentiary matters is more in keeping with the original intent of the drafters of the administrative procedures act. 33 Fed. Prac. & Proc., Judicial Review §§ 8333, 8334.
>
> Thus, in the interests of simplifying the process of identifying the correct standard of review and bringing our approach closer to the original use of the two standards, we hold that henceforth the substantial evidence standard will be applied any time we review an evidentiary ruling. When the burdened party prevailed before the agency, we will determine if substantial evidence exists to support the finding for that party by considering whether there is relevant evidence in the entire record which a reasonable mind might accept in support of the agency's conclusions. If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *See, Wyo. Consumer Group v. Public Serv. Comm'n of Wyo.*, 882 P.2d 858, 860–61 (Wyo.1994); [*Board of Trustees of Laramie County School Dist. No. 1 v.*] *Spiegel*, 549 P.2d [1161,] 1178 [ (Wyo. 1976) ] (discussing the definition of substantial evidence as "contrary to the overwhelming weight of the evidence"). If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale v. S & S Builders, LLC*, 2008 WY 84, ¶¶ 21–22, 188 P.3d 554, 561 (Wyo.2008).[3] An agency's conclusions of law are reviewed *de novo*, and are affirmed if they are in accordance with the law. Id., 2008 WY 84, ¶ 26, 188 P.3d at 562. "[W]e afford no deference to conclusions reached by the district court, but review the case as if it had come directly from the agency." *Loomer v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2004 WY 47, ¶ 15, 88 P.3d 1036, 1041 (Wyo.2004).

[¶ 15] There is no question that the appellant did, indeed, suffer a serious ankle injury. His ankle was surgically repaired on July 19, 2002. The question is simply whether the appellant proved that the injury occurred at work. From the facts presented,

---

**3.** Although not relevant in the instant case, the "arbitrary and capricious" standard remains as a "safety net" for certain agency action that may be related to the evidence, but which action is not a true evidentiary question. *Dale,* 2008 WY 84, ¶ 23, 188 P.3d at 561.

there are only two possibilities: the injury either occurred at work during the morning of July 3, or it occurred away from work between 12:30 p.m. on July 3 (when the appellant left work) and 4:30 p.m. on July 4 (when the appellant went to the emergency room).

[¶ 16] The hearing examiner characterized this conflict in the evidence as a credibility contest. On one side are the appellant, his fiancée, and two friends. Collectively, their version of events is that the appellant injured his ankle at work on the morning of July 3, that he complained of pain in his ankle during the afternoon and evening of July 3, and that the ankle looked swollen and discolored that night. The appellant's fiancée and friends all testified that he told them at the time that the injury occurred at work.

[¶ 17] On the other side, the appellant's supervisor testified that he talked to the appellant three times during the morning of July 3, that the appellant never mentioned an injury, and that the appellant did not appear to be limping at any time that morning. In addition, the hospital record generated after the appellant's trip to the emergency room at 4:30 p.m. on July 4 indicates that the appellant reported that the injury occurred at home just prior to his arrival at the hospital.

[¶ 18] In his findings of fact, the hearing examiner evaluated this contradictory evidence as follows:

15. In this matter the Employee must meet his burden of proof in order that he prevail in his claim and receive benefits. Accordingly, the case turns on the credibility of the witnesses and the information that they provide. The Employee's case is primarily based upon his recitation of events and those people to whom he described his accident [ ]. This Hearing Officer is not convinced by the testimony presented to support Employee's claim. There were no eyewitnesses to the injury or to employee's behavior after the alleged injury except his supervisor who was not told of an injury and did not notice Employee limping. The Employee had participated in several activities the day of his injury and prior to when he saw Doctor Jarrad during which he did not manifest symptoms of a serious injury. He went to a concert in which his band participated and was there for more than 12 hours even going to a restaurant for a late night dinner at approximately 1:30 a.m., and the next day he went to the July 4th parade where he had a demolition car as an exhibit. He did not go to the hospital until late in the afternoon of the day after he claims to have been injured. One week later he was in the demolition derby during which he had to get in and out of the car through the windshield more than once. There are other facts that are not consistent with Employee's claim that he had a serious injury on July 3rd. Employee testified he decided to see the doctor when he took his boot off late that night and saw it was swollen and that he went to the hospital soon after he left the parade. The hospital admission form says he told the clerk that he injured his ankle at home just prior to coming to the hospital. The time recorded that Employee was at the hospital is 4:30 p.m. long after the end of the parade. He did not mention the injury to his employer until July 8, 2002, even though he talked to him three times on the day he claims he was injured and the supervisor did not notice that Employee had a limp when he had an opportunity to observe Employee. Much testimony centered around Employee participating in the demolition derby 10 days after the alleged injury. This information is significant because it shows a pattern of activity by Employee that is not consistent with a person that had a serious injury requiring a reconstruction of his ankle. Employee's conduct during the weekend [of] July 4th is also not consistent with his having incurred a serious injury the day before. His inconsistent behavior on the day of the alleged injury and the day after belies the testimony presented. Considering all these facts and the actions of the Employee, this Hearing Officer does not find Employee's testimony to be credible and that he has met his burden of proof.

[¶ 19] "A hearing examiner's determination of credibility will not be overturned unless it is clearly contrary to the over-

whelming weight of the evidence." *Olivas v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 29, ¶ 17, 130 P.3d 476, 485 (Wyo.2006); *see also Pederson v. State ex rel. Wyo. Workers' Comp. Div.*, 939 P.2d 740, 742 (Wyo.1997). In the present case, we cannot say that the "overwhelming weight of the evidence" supports the appellant's version of events, as opposed to the testimony of Harless, the timing of the emergency room visit, the information contained in the emergency room record, and the appellant's participation in that weekend's events. While we are not convinced that the fact of the appellant's participation in the demolition derby a week after the injury sheds much light on whether the injury occurred on July 3 or July 4, we do find that substantial evidence in the record supports the conclusion that the appellant did not prove that the injury occurred at work on July 3.

## CONCLUSION

[¶ 20] The issues of the timeliness of the appellant's reporting of his alleged work injury to his employer and the timeliness of his filing of an injury report with the Division played no part in the hearing officer's decision in this case, and were waived below by the Division. The hearing officer's determination that the appellant did not prove that his injury was work-related was not unsupported by substantial evidence.

[¶ 21] Affirmed.